Gustave Bouligny *v.* Mrs. Edward Fortier and Husband.—Mrs. Mathilde E. Fortier, Third Opponent and Intervenor.

The incapacity of the wife to contract is removed by the assent of the husband ; but this is true only in cases where she can *legally* contract. For example, she can only contract with her husband in certain cases ; she cannot, except in certain enumerated cases, dispose of her dotal property ; she cannot, when there exists a community of acquests and gains between her and her husband, acquire property for her separate account. To this last rule there are exceptions ; hereafter noticed.

The declarations of a married woman, in the generality of cases, are not binding on her unless verified, or unless she has been benefitted by the contract.

The husband is only responsible to his wife for the amount of her paraphernal property alienated, when it is proved that he has received the price or otherwise disposed of the same for his individual interest.

All the effects of the spouses, not satisfactorily established to have been brought into marriage, or acquired during the marriage by inheritance or by donation made to the one or to the other particularly, constitute the assets of the community or partnership of acquests and gains.

*Per curiam :* We have no doubt that the wife may legally make an exchange of her paraphernal property.

The right of the wife to administer her paraphernal property and to alienate the same implies the faculty of investing or re-investing her paraphernal effects.

All the wife's property which is not declared to be dotal is paraphernal, and the wife has the administration and the enjoyment of it, but she cannot alienate it without the authorization of her husband or of the Judge.

Under our Code the wife has an action against her husband for the restitution of her paraphernal property.

A wife cannot invest beyond her means, and conveyances made to the wife, on her failure to show adequate means, or maintaining similar conveyances by reason of such adequate means, will be set aside. Various decisions re-affirmed.

The ability of the wife to acquire, during the marriage, property in her own name and for her separate account, is an exception to the general rule, and it must, therefore, be strictly and rigidly construed ; and consequently the wife is required, not only to prove that she had paraphernal effects at her disposal, but also that they were ample to enable her, *reasonably at least,* to make the new acquisition, otherwise the contract will be treated as a contract of the community. The converse of the proposition is equally true.

APPEAL from the Second District Court of New Orleans, *Morgan,* J. *Johnson & Denis,* and *E. A. Bradford,* for plaintiff. *J. & E. Bermudez* and *P. Soulé,* for defendants. *E. F. Filleul,* for third opponent and intervenor.

Duffel, J.   By public act passed before *A. Mazureau,* a notary public in the city of New Orleans, on the 4th of February, 1853, the third opponent, *Mrs. Mathilde Labranche,* duly assisted and authorized by her husband, *Edmond Fortier, Jr.,* purchased from *J. A. Livaudais,* for the price of eighty thousand dollars, a plantation in the Parish of Orleans, five miles above the city of New Orleans and on the opposite side of the river Mississippi, measuring thirty-three arpents, eight toises and five feet, more or less, front to the river, and forty arpents in depth, bounded above by the land of *Edmond Fazende,* and below by that of *M. Fazende;* together with fifty-six slaves and seven hundred and forty-six shares of the capital stock of the Citizens' Bank of Louisiana, being the same property which *Livaudais* had acquired from *Messrs. Lacoste* by act of the 26th April, 1851.   To make up the above sum of $80,000, the purchaser, *Mrs. Fortier,* paid in cash $5,193 62, made and subscribed, on the 4th of February, 1853, three promissory notes of $8,666 66 each, to her own order and by her indorsed, payable respectively on the 15th of February, 1856, 1857 and 1858, with 6 per cent, interest from date to

27

maturity, and 8 per cent. interest from maturity till paid, with mortgage and vendor's privilege on the conveyed property; and for the balance of the price, the purchaser assumed the payment of the following claims, which were secured by special mortgages on the same property, to wit:

1. A loan of $14,869 18, obtained as a stockholder of the Citizens' Bank of Louisiana, payable 1st of August, 1853, and renewable according to the charter of said bank.

2. Nine notes furnished by *Livaudais* to *Messrs. Lacoste*, his vendors as aforesaid, in part payment of his said purchase of the 26th April, 1851, two of $4,906 20⅜ each, and one of $1,500, payable on the 1st of March, 1853, three other corresponding notes payable on the 1st of March, 1854, and three other corresponding notes payable on the 1st of March, 1855.

The act of sale to *Mrs. Fortier* contains the following clause : " La Dame acquéreur, et le sieur *Edmond Fortier son mari*, déclarent expressément et reconnaissent que l'acquisition de l'habitation, de la portion de terre, des esclaves et actions de banque sus-décrits, a été faite par la dite *Dame Fortier*, dans le but de faire remploi de certaines valeurs provenant de ses biens paraphernaux dont l'origine et l'existence se trouvent constatées par les actes ci-après mentionés, savoir : suivant acte au rapport de *Jules Mossy*, notaire, en date du dix-neuf juin mil huit cent quarante-trois, la dite *Dame Fortier* a acheté de *Mr. J. P. Benjamin*, assignée du *sieur Edmond Fortier*, le quart indivis d'une habitation et des esclaves y attachés, qu'elle a pris en payement de ses droits paraphernaux s'élevant à quinze mille piastres dont le sieur son mari s'était fait charge, et provenant d'une donation que lui a faite son père le *sieur Lucien Labranche*, par acte passé devant *J. M. M. Guiramond* juge, et ex-officio notaire, de la paroisse St. Charles, le vingt-huit avril mil huit cent trente. Suivant acte au rapport de *Théodore Guyol*, notaire en cette ville en date du neuf janvier mil huit cent cinquante, la dite *Dame Fortier* a vendu le quart indivis de la dite habitation et des esclaves y attachés, à *Messieurs Hermogène Babylas Labranche* et *Onésiphore Victorin Labranche*, pour la somme de trent mille piastres. Et suivant acte de partage fait entre les héritiers de feu *Lucien Labranche* devant *Daniel Clarke, jr.*, Recorder de la paroisse de Jefferson, le premier mai, mil huit cent quarante-sept, la dite *Dame Fortier* a reçu quinze mille deux cent cinquante-neuf piastres et cinq sous. Desquels actes précités, il résulte que le montant des droits paraphernaux dont la *Dame Fortier* fait maintenant le remploi s'élève à quarante-cinq mille deux cent neuf piastres cinq sous."

*Gustave Bouligny*, the plaintiff, as holder of the last note furnished by *Mrs. Fortier* to her vendor *Livaudais*, obtained an order of seizure and sale of the plantation, slaves, &c., acquired as aforesaid on the 4th of February, 1853, and the whole property was, under said writ, adjudicated to *Gustave Bouligny*, on the 10th of April, 1858, for $63,400. The purchaser assumed the mortgage of the Citizens' Bank, then reduced to $11,885. He paid in cash $1,607 50, amount of costs. He retained $11,366 86, amount, principal and interest, due him on the writ of seizure and sale; and he also retained, under article 707 of the Code of Practice, the balance of the price, say $38,540 64, to satisfy, *pro tanto*, two special mortgages granted by the third opponent to *Bouligny* and *Ganucheau*, the one for $18,000, by act before *A. Mazureau*, notary, on the 1st of March, 1856, and the other for $25,000, by act before *P. Lacoste*, notary, December 22d, 1857. This last act includes also other landed property and slaves mortgaged by *Edmond Fortier, Jr.*, and the renunciation, by *Mrs. Fortier*, of her legal mortgage thereon.

The third opponent charges in her petition of intervention that there exists between her and her husband, a community of acquests and gains, and that her husband is indebted to her in the sum of $64,521 71, amount of her paraphernal property received by him and never accounted for. That the title to the Livaudais plantation, slaves and bank stock, although taken in her name, was in reality an acquisition for account of the community aforesaid, as she had no separate funds under her administration or control, to invest or re-invest; that the special mortgages granted on the 1st of March, 1856, and 22d of December, 1857, to *Bouligny & Ganucheau*, are, for the same reasons, community transactions; that she cannot legally bind herself for the debts of her husband; that she acted throughout under marital influence, and is not bound by her declarations; that the note on which execution issued was, prior thereto, extinguished by payment.

The third opponent concludes by asking judgment against her husband for the amount claimed, with the recognition of her tacit mortgage; she also asks that the property purchased by her, and the mortgages granted by her to *Bouligny & Ganucheau*, be decreed to be for account of, and against, her husband or the legal community existing between her and her husband. She also asks to be paid by preference, the amount of the purchase made by *Gustave Bouligny* at the Sheriff's sale aforesaid, after deducting the Citizen's Bank's mortgage and the costs, and judgment accordingly against *Gustave Bouligny* and *Bouligny & Ganucheau;* and her counsel, in their brief, demand in addition the nullity of her renunciation. All the above named persons were made parties to the proceedings, and no exception was taken to this mode of proceeding.

*Gustave Bouligny*, and *Bouligny & Ganucheau*, who alone contest the claims of *Mrs. Fortier*, contend that the third opponent was the true and sole owner of the property seized on her, and that the mortgages granted by her to *Bouligny & Ganucheau* are good and valid against her.

We gather from the evidence:

1. That *Edmond Fortier, Jr.*, received on the 1st of May, 1847, the inheritance of his wife in the succession of her father, *Lucien Labranche*, amounting to $15,259 05; and that on the 25th of February, 1848, he received for, and on account of his wife, the further sum of $1,762 66, being her inheritance in the succession of her sister, *Catherine Delphine Labranche*, wife of *Valcour Fortier*.

2. That the third opponent received herself, and without the concurrence of her husband in the act, on the 10th of September, 1852, $37,500, being her share in the property originally acquired by her from the assignee of her husband, on the basis of the sale of the whole property made by her brothers, *H. B.* and *O. V. Labranche* to *A. W. Walker*. The last amount was received as follows: $5,000 in cash, $10,000 in six notes of $1,666 66⅔ each, payable, three on the 1st of September, 1853, and three on the 1st of September, 1854; two of said notes were due by *H. B. Labranche*, two by *O. V. Labranche*, and two by *R. Labranche;* $22,500, in five notes of *A. W. Walker* of $4,500 each, payable respectively on the 1st September, 1855, 1856, 1857, 1858 and 1859, with 6 per cent. interest from 1st September, 1852, on the four last notes. The two notes of *R. Labranche*, amounting to $3,333 33⅓, were taken up and paid by him before the date of the sale from *Livaudais* to the third opponent.

3. That the four notes of *H. B.* and *O. V. Labranche*, amounting, in the aggregate to $6,666 66⅔ were, through the agency of *Bouligny* and *Ganucheau*, discounted on the 10th February, 1853, and produced $6,056 31; the four first notes of *Walker* were, in like manner, discounted on the 9th February, 1853, and

produced $14,646 05, and the last note of *Walker* was likewise discounted on the 20th February, 1855, and produced $3,710 99. And those several discounts, amounting, in the aggregate, to $24,413 35 neat, constitute the only paraphernal effects of the third opponent affected, in any manner, to the payment, in part, of her purchase of $80,000, as it is also in evidence that the $5,000 paid cash, were advanced, for that purpose, by *Bouligny & Ganucheau.*

4. That *Bouligny & Ganucheau*, who had married sisters of the third opponent, directed the sale to be made to the third opponent in its present shape, or at least negotiated for the same; that they, on the 3d of February, 1853, opened in their books a regular account in the name of the third opponent, which account was not, however, submitted to her before the 1st of February, 1858, nor is it shown that she was aware of its existence. The credit side contains, principally, the neat proceeds of the above described notes of *Labranche* and *Walker*, the proceeds of the personal notes, subscribed, from time to time, by the third opponent, and the proceeds of the crops made on the Livaudais plantation, and on a small adjoining place acquired by *Edmond Fortier, Jr.*, on the 10th July, 1857, without, however, making any discrimination. (The two places were thrown together as one plantation ; and twelve slaves bought by *Edmond Fortier, Jr.*, on the 14th of March, 1856, and one on the 1st of April, 1856, were also worked with the other slaves of the main plantation.) The debit side, besides the price of the Livaudais plantation, or so much thereof as fell due from time to time, contains all the family, household and plantation expenses, also $972, the price of a slave sold to *Hypolite Fortier*, her son; $1,500, the price of a slave sold to her husband on the 1st of April, 1856 ; $16,200, the price of twelve slaves sold to her husband on the 14th of March, 1856 ; $1,822 60 for interest and acceptances on account of said slaves, making, in the aggregate, $20,494 60 paid for account of *Hypolite* and *Edmond Fortier*. To which amount *Bouligny & Ganucheau* add, as still due on the tract of land bought on the 10th of July, 1857, by *Edmond Fortier, Jr.*, and to be paid by the third opponent, $11,527 37.

5. That *Edmond Fortier, Jr.*, had the full, complete and absolute control and management of the whole concern, shipping the crops and taking bills of lading in his own name; that whenever acts of mortgages or notes were required to be signed by his wife, he was written to to that effect by *Bouligny & Ganucheau ;* in fact, up to a very short time before the seizure of the plantation, she took no part, except to lend her signature whenever required.

Having thus, from the peculiar nature of the case, been compelled to give a full statement of the pleadings and facts, we will now proceed to draw our conclusions.

Considering the degree of relationship which existed between the parties, the active part which *Bouligny & Ganucheau* took in all the transactions from their origin, and their means of knowledge, as also the manner in which they transacted and blended together the affairs, or dealings, of the third opponent and of her husband, we cannot view them in the light of third persons. C. C. 3522, No. 32 ; *Blanchard* v. *Allain*, 5 An. 367.

The incapacity of the wife to contract is removed by the assent of the husband (C.C. 1775, 2420, 1779 ;) but this is true only in cases where she can legally contract. For example, she can only contract with her husband in certain cases. C. C. 2421. She cannot, excepting in certain enumerated cases, dispose of her dotal property, C. C. 2337. She cannot, when there exists a community of acquests and gains between her and her husband, acquire property for her separate account. C. C. 2371. To this last rule we have also exceptions which will be

hereafter noticed. Nor are the declarations of a married woman, in the generality of cases, binding on her, unless verified, or unless she has been benefitted by the contract; and the reason is, the controlling influence which the husband is always presumed to exercise on all her acts. "Si la femme prenait, en contractant, la qualité de fille majeure, de femme divorcée, ou de veuve, le contrat n'en serait pas moins nul; autrement ce serait ouvrir une voie pour éluder la loi. Celui qui a contracté avec une femme, doit s'imputer de n'avoir pas connu son état. Ce n'est de la part de la femme qu'un simple dol, qui ne peut donner lieu à aucune action criminelle. C'est un mensonge, et non pas un faux caractérisé." Toulier, vol. 2, No. 622; *Pilcher* v. *Kerr*, 7 An. 145; *Mrs. Delery* v. *Her Husband et al.*7 An. 293; *Mousier* v. *Zunts et al.* 14 An. 15; Id. p. 169, and the numerous authorities therein cited; *McIntosh* v. *Smith*, 2 An. 757.

The husband is only responsible to his wife for the amount of her paraphernal property alienated, when it is proved that he has received the price, or otherwise disposed of the same for his individual interest. C. C. 2367; *Olivier* v. *Her Husband*, 6 R. 36; *Succession of Hargis*, 3 An. 142. This proof, under the French Code, 1450, results from the simple fact that the husband was a party to the act, and *multo magis* when he actually received the price. Troplong, 2, 1447; Marcadé, 5, 1450. The same rule, with certain qualifications, prevails in Louisiana. *Gillett & Co.* v. *Deraneo et al.* 6 An. 590. Hence it results that, *Edmond Fortier, Jr.*, having received the inheritance of his wife in the successions of her father, *Lucien Labranche*, and of her sister, *Catherine Delphine Labranche*, amounting, in the aggregate, to $17,021 71, is responsible to her in that amount, unless he can show a discharge from her, or a disbursement on her account, neither of which certainly appears from the conveyance of the Livaudais property, which does not even contain a delegation. C. C. 2126 and 2188. It also results that the third opponent having, without the concurrence of her husband in the act of discharge, received her share of the Walker purchase, $37,500, her husband is not responsible therefor, unless she can establish, by legal evidence, that her husband subsequently came in possession of the same, or used it for his individual interest. And as the record does not contain such proof as to the cash payment of the Walker purchase, $5,000, and the two notes of *R. Labranche*, say $3,333 33⅓, *Edmond Fortier, Jr.*, will only be held responsible for the balance of the price, $29,166 66⅔, and this only in case the Livaudais sale be decreed to be a conveyance made to the community.

By a strict interpretation of the articles 2314, 2371, and 2374, all the effects of the spouses, not satisfactorily established to have been brought in marriage, or acquired during the marriage, by inheritance or by donation made to the one or the other particularly, constitute the assets of the community, or partnership of acquests and gains. We have already seen the exception created by the article 2421; the articles 128 and 2336 add two others. We have no doubt that the wife may legally make an exchange of her paraphernal property, although our Code does not, as the Code Napoleon, 1407, contain any provision to that effect. And it is now the well settled jurisprudence of this State, that the right of the wife to administer personally her paraphernal property and to alienate the same, (C. C. 2361 and 2367) implies the faculty of investing or re-investing her paraphernal effects. *Dominguez* v. *Lee*, 17 L. R. 299; *Terrell* v. *Syndic*, 1 Rob. 367; *Gonor* v. *Husband*, 11 Rob. 526; *Stroud et al.* v. *Humble et al.* 2 An. 930; *Young* v. *Young*, 5 An. 611; *Hanna* v. *Pritchard*, 6 An. 730; *Metcalf* v. *Clark*, 8 An. 286.

Under the French *régime dotal*; as under our Civil-Code, the property which is not declared to be dotal, is paraphernal (C. N. 1574; C. C. 2360); and the wife has the administration and the enjoyment of her paraphernal property, but she cannot alienate it without the authorization of her husband or of the judge. C. N. 1576; C. C. 2361 and 2367. And under the French conventional community, the spouses may stipulate a simple community of acquests, which would then consist of the acquisitions made during the marriage by the spouses jointly or separately, with the savings of their common industry, and the fruits and revenues of their separate property. C. N. 1498; C. C. 2371. Thus it is perceived, that the provisions of our Code in relation to our *legal community* and the *paraphernal property* of the wife are a combination, or at least bear a great similarity to the *régime dotal* and *communauté réduite aux acquêts*. Thus, again, under the *régime dotal*, the husband who enjoys the paraphernal property of the wife, is liable to all the obligations of the usufructuary (C. N. 1580); and under our Code, 2367, 2368, the wife has an action against her husband for the restitution of her paraphernal property.

The system of *remploi*, re-investment, is not as ample under our Code as under the Code Napoleon, but it is sufficiently recognized to authorize us to invoke, to a certain extent, the authority of the eminent French commentators and jurists who have exhausted the subject. That the system itself is not foreign to our laws, is apparent, among others, from the following articles of the Civil Code : 2336, 2340, 2341, 2355, 2421, and 70.

We have stated that the right of the wife to invest or re-invest her paraphernal effects is derived from the liberal interpretations given to the articles 2361 and 2367 of the Civil Code. Were it not so, the investment would inure to the community, and constitute the wife a creditor of the community to the extent of the amount invested. We have searched in vain, in our Reports, for a case where the right of the wife to invest, beyond her means, was sanctioned by this Court, but we have, on the contrary, found numerous decisions either setting aside conveyances made to the wife, on her failure to show adequate means, or maintaining similar conveyances by reason of such adequate means. *Ellis* v. *Rush*, 5 An. R. 116; *Squier* v. *Stockton*, 5 An. 742; *Young* v. *Young*, 5 An. 611; *Metcalf* v. *Clark*, 8 An. 286; *Pearson* v. *Pearson*, 15 An. 119; *Clark* v. *Norwood*, 12 An. 598; *Cormier* v. *Ryan*, 10 An. 688; *Bass* v. *Larch*, 7 An. 104.

As the ability of the wife to acquire, during the marriage, property in her own name and for her separate account, is, under our jurisprudence, an exception to the general rule, (C. C. 2374) it must be, therefore, strictly and rigidly construed; and consequently the wife is required, not only to prove that she had paraphernal effects at her disposal, but also that they were ample to enable her, *reasonably, at least* to make the new acquisition; otherwise, the contract will be treated as a contract of the community. Such, without doubt, would be the result in a contestation between the creditors of the husband and the wife; and we can see no good reason to depart from the principle in the converse of the proposition, by denying to the wife the privilege of showing the true character of the contract because of her declarations, which, as we have already stated, do not conclude her. *Prudhomme* v. *Edens*, 6 Rob. 65; *Erwin* v. *McCalop*, 5 An. 173; *Patterson* v. *Frazer*, 5 An. 586. The authority to invest, does not carry with it the unbounded liberty to run into wild and ruinous speculations, and was never intended to place the wife, having paraphernal property, on a footing of perfect equality with a wife separated in property by judgment or by contract, as would be the case did we hold the third opponent to her contract.

We therefore conclude that it is against the policy of the law, and the spirit and letter of our system of legal community, to sanction contracts made by the wife, under pretext of investing her paraphernal effects, when, as in the case at bar, the amount invested bears no proportion to the value of the property substituted in its place, but on the contrary, that all such acquisitions belong to the community, saving always to the wife her action for the reimbursement of the price contributed by her.

Our notions of the necessary conditions to constitute a valid investment, are perhaps more inflexible (apart from certain forms which do not here require our notice) than those generally entertained in France, but this is due principally to the difference which marks the two systems, as will be at once perceived by reading the articles 1407 and 1408 of the Napoleon Code. Yet we are not the less satisfied that our conclusion as to the real nature of the Livaudais purchase, would undoubtedly be the same under the French tribunals. The controlling opinion in France is, in spite of Art. 1407, N. C., that when the property received in exchange, or acquired by way of *remploi*, by one of the spouses, is of double the value of the one ceded in counter exchange, or of the price invested, that the undivided half of the newly acquired property belongs of right to the community; but that when the difference is more than fifty per cent., then the property belongs either in whole, or proportionately to the community, according to the peculiar facts of each particular case. Pothier, Trait. de la Com., part I, ch. 2, Nos. 197 and 198 ; Marcadé, *verbo* Cont. de Mar., vol. 5, art. 1435, par. 1 ; Troplong, vol. 1, 637; Duranton, vol. 14, Nos. 195 and 391.

One of the reasons assigned by Duranton is, that should it be otherwise, a husband who had sold one of his estates for 6,000 fr. could acquire an estate of the value of 40,000 fr. or more, with the funds of the community, by simply declaring in the act, that the acquisition is made to replace his conveyed property. He would thus take the profits which the community might have otherwise derived from the acquisition ; and this would be contrary to the principle of the Code, for he owes to the community all his industry, all the profits which he can derive from his speculations.

It naturally follows, from our above opinion of the Livaudais purchase, that the mortgages granted by the third opponent must follow the same fate.

We express no opinion as to the validity of the renunciation made by the third opponent, on other property mortgaged by her husband, as the question was not put at issue by the pleadings.

With regard to the note on which execution issued in this case, we have come to the conclusion that the evidence does not substantiate the allegations of the third opponent.

It is, therefore, ordered, that the judgment of the District Court be reversed. It is further ordered, adjudged and decreed, that the sale of all the landed property, slaves and bank stock, made by *J. A. Livaudais* to the third opponent, by act before *A. Mazureau*, notary, in New Orleans, on the 4th of February, 1853, as also the two special mortgages granted by the third opponent on the above mentioned landed property and slaves to *Bouligny & Ganucheau*, the one bearing date March 1, 1856, passed before the said *Mazureau*, and the other bearing date December 22, 1857, passed before *Ph. Lacoste*, notary, in New Orleans, be, and the same are hereby declared to be for account of the community which then existed between the third opponent and her husband, *Edmond Fortier, Jr.*; and that

consequently the third opponent be released from all personal liability growing out of the said acts.

It is further ordered, adjudged and decreed, that the third opponent have judgment against her said husband for the amount of her paraphernal property received by him, to wit, the sum of forty-six thousand one hundred and eighty-eight dollars and thirty-eight cents, and that her legal mortgage on all the immovable property and slaves of her husband, to secure the payment of said sum, be hereby recognized, to take effect : on May 1, 1847, to secure fifteen thousand two hundred and fifty-nine dollars and five cents thereof; on February 25, 1848, to secure the further sum of seventeen hundred and sixty-two dollars and sixty-six cents thereof; and on February 3, 1853, the day of the Livaudais sale, to secure the balance, say twenty-nine thousand one hundred and sixty-six dollars and sixty-six cents.

It is further ordered, adjudged and decreed, that *Gustave Bouligny*, or his succession, be condemned to pay to the third opponent the amount retained in the Sheriff's sale of the 10th April, 1858, of the property conveyed as aforesaid by *J. A. Livaudais*, to satisfy *pro tanto* the above recited mortgages in favor of *Bouligny & Ganucheau*, to wit, the sum of thirty-eight thousand five hundred and forty dollars and sixty-four cents; which last amount, when paid as aforesaid to the third opponent, is to be credited on the judgment herein rendered against *Edmond Fortier, Jr.*

And in default of the above payment by *Gustave Bouligny*, or his succession, it is further ordered and decreed, that the property adjudicated as aforesaid by the Sheriff, be seized and sold for cash.

It is finally ordered, that the costs of both Courts be divided and paid as follows : One-third by *Edmond Fortier, Jr.;* one-third by the syndic of the insolvents, *Bouligny & Ganucheau;* and one-third by the succession of *Gustave Bouligny.*

Land, J., took no part in this opinion.

Merrick, C. J., absent.