## Case No. 11,669.

### REID v ROCHEREAU et al.

[2 Woods, 151;[1] 1 La. Law J. 90.]

Circuit Court, D. Louisiana. Nov. Term, 1875.

HUSBAND AND WIFE—WIFE'S SEPARATE ESTATE—PURCHASE OF REALTY—COMMUNITY PROPERTY—MORTGAGE—RECITALS—BANKRUPTCY.

1. A married woman cannot convey or incumber her real estate except in the manner prescribed by law.

2. She is not bound by a false declaration made in a mortgage executed by her, to the effect that the mortgaged property was community property, even if the mortgage is executed with all the forms prescribed by law.

3. Where a married woman had a separate paraphernal fund amounting to $6,429, and invested it in property which cost $10,370, the excess being paid out of the community funds, and took the deed in her own name: held, that the property belonged to the community, and the married woman became the creditor of the community for the amount so invested by her.

In equity. Heard on pleadings and evidence for final decree. This was a bill filed by Mrs. Ellen C. Reid, her husband, Andrew J. Reid, appearing as her next friend [against A. Rochereau & Co. and others], to set aside a sale of certain real estate in the city of New Orleans, made by the assignee in bankruptcy of the said husband, Andrew J. Reid, the property having been sold as part of the bankrupt estate. The facts, as disclosed by the evidence, were as follows: The complainant and Andrew J. Reid were married in 1862. At the time of her marriage, the com-

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

plainant received from her father, as a marriage gift, the sum of $2,100 in gold and silver coin, which she managed and administered until the year 1867, at which time it had increased to the sum of $3,100 in United States currency. In August, 1867, the mother of complainant gave her the sum of $3,-329; so that, at that time, the complainant had in her possession. as her separate paraphernal property, the sum of $6,429. The complainant, in May or June, 1867, made a bargain with one Harrell for the purchase of two lots, the same being the property in controversy in this case. The price agreed on was $2,200, of which $1,000 were paid in August or September by complainant out of her paraphernal funds. On the 30th of December, 1867, Harrell, by notarial act, conveyed the premises of Mrs. Reid, and on the 10th of March, 1868, she paid to him out of the same fund, as she claimed, the residue of the purchase money of the lots, to-wit: $1,200. Although the conveyance was made to Mrs. Reid, it did not recite that the purchase money was paid out of her separate paraphernal estate, nor that the property conveyed was to be held as her separate property. Soon after making the bargain with Harrell for the purchase of the lots, the complainant made a contract for the erection on them of a dwelling, for the price of $7,500. The dwelling was completed in the autumn of 1867, and the price agreed on was also paid out of the paraphernal funds of complainant, as she claims. On the 26th of March, 1873. Andrew J. Reid, the husband of complainant, and complainant herself joined in an authentic act before James Fahey, notary public, whereby, to secure the sum of four thousand four hundred and fifty-six dollars, then loaned by T. M. Hyde to Andrew J. Reid, they conveyed the said premises to said Hyde. This act of mortgage contained the following declaration: "And here the said Andrew J. Reid and Mrs. Ellen C. Reid mutually declare that although the herein above described and mortgaged property was acquired in the name of Mrs. Reid, as aforesaid, nevertheless the same was purchased with funds belonging to the community then existing and which now exists between them, and really belongs to said community." Reid, the husband. had represented to the notary who drew up the act, that the property was community property. and it was upon the strength of his announcement that the above clause was inserted in the act. The act was not signed by Mrs. Reid in the presence of the notary, but of one Jones. the clerk of the notary. who afterwards, on the same day, subscribed the act as a witness. Mrs. Reid knew that the act was a mortgage for $4,400 on the property therein described, and that the money was to be paid her husband, to enable him to commence business; but the mortgage was not read to her in full; the written parts, including the clause above quoted, were explained to her by

Jones. who offered to read the entire act; but Mrs. Reid said it was unnecessary, as she understood what it was. The notary himself never explained to Mrs. Reid the nature and character of the act separate and apart from her husband before she signed the same. In fact he never saw complainant until long after the execution of the mortgage. The money raised on the mortgage, to-wit. $4,400, was paid by Hyde, the mortgagee, to complainant's husband, and was used by him in his business.

The bill claimed that the property so mortgaged was the separate paraphernal property of complainant. and that the mortgage, made to secure the said sum of money for her husband was void; and the bill prayed that it might be so declared, and that the sale of said property, by virtue of the proceedings in bankruptcy against complainant's said husband, might be set aside and declared void, and that the purchasers at said sale might be perpetually enjoined from interfering with complainant's possession.

John McEnery, for complainant.
T. J. Semmes, Robert Mott, and C. E. Schmidt, for defendants.

WOODS. Circuit Judge. The mortgage, purporting to be executed by Andrew J. Reid and his wife, the complainant, was not executed according to law by the complainant, and was not effectual to bind her separate estate. Though signed by the wife, it is not her deed.

If the property were her separate property, the law points out the manner in which she should proceed to mortgage it for the benefit of her husband. and that method was not pursued. By the civil as well as by the common law, the property of the wife cannot be conveyed or incumbered except in the manner prescribed by law.

The wife is not estopped by the declaration made in the mortgage to the effect that the mortgaged property was community property, even if the mortgage had been executed with all the forms prescribed by law. Bouligny v. Fortier. 16 La. Ann. 209; Beauregard v. Her Husband, 7 La. Ann. 293; Thibodeaux v. Herpin. 5 La. Ann. 578; Bisland v. Provosty, 14 La. Ann. 169; Gasquet v. Dimitry. 9 La. Ann. 589.

The mortgage in question not having been executed by the complainant according to law, the statement therein made. that the property mortgaged was community property no more binds the wife than a declaration made orally to the mortgagee that such was the fact. As the wife cannot be estopped by any such declaration. the question is left entirely open for examination: Was the property mortgaged the paraphernal property of the wife or was it the property of the community? If it was the former. the mortgage is void; if the latter, it is valid and binding.

The evidence shows that the lots and the house erected thereon cost $9,700. In addition to this sum, there was expended in additional permanent improvements on the premises in 1871 and 1872, the further sum of $670, thus making the entire cost of the property $10,370. The entire paraphernal estate of the complainant invested in the property was, $6,429. Now, under this state of facts, what are the rights of the wife, complainant in this case?

I think this question is conclusively settled by the decisions of the supreme court of Louisiana. In the case of Bass v. Larche, 7 La. Ann. 104, the husband claimed, as his separate property, certain lands and slaves purchased by him during the marriage. In passing upon the case the court said: "The plaintiff purchased property to a much larger amount than he had funds to pay for at the time, gave some obligations, and assumed the payment of others; it may be doubted whether such a purchase could, under any circumstances, be considered as an investment of separate funds."

In the case of Bouligny v. Fortier, 16 La. Ann. 214, the court say: "We have searched in vain in our reports for a case where the right of the wife to invest beyond her means was sanctioned by this court, but we have, on the contrary, found numerous decisions setting aside conveyances made to the wife on her failure to show adequate means. As the ability of the wife to acquire during the marriage, property in her own name and for her separate account is, under our jurisprudence, an exception to the general rule (Civ. Code, 2374), it must be, therefore, rigidly and strictly construed, and, consequently, the wife is required not only to prove that she had paraphernal effects at her disposal, but also that they were ample to enable her, reasonably, at least, to make the new acquisition; otherwise the contract will be treated as a contract of the community."

These authorities seem to settle the case against the claim of the complainant. Giving the largest effect to the testimony of complainant, she only had $6,429 to invest in the property, and the evidence shows beyond question that it cost $10,370. It seems clear that when a wife mingles her own paraphernal funds with the community funds, in the purchase of property, she cannot claim the whole as her separate estate. The property belongs to the community, and she is the creditor of the community to the amount of her investment.

Such I believe to be the decisions of the supreme court of this state on this subject, and they are binding on this court.

The complainant's bill must, therefore, be dismissed at her costs.