November 23, 1908.

————O————

No. 4519.

Court of Appeal, Parish of Orleans.

## SAMUEL B. TARVER ET AL. VS. PEOPLE'S FIRE INSURANCE COMPANY OF NEW ORLEANS.

1. If an insurer with full knowledge of facts which would avoid the policy, nevertheless executes and delivers it, or if, after its delivery, he acquires knowledge of such facts and subsequently treats it as valid and binding, by any acts, words or conduct which might reasonably lead the insured to suppose himself to be still insured, the insurer will have waived the defect and be estopped to assert it.

2. Notice to a general agent is notice to the company. And this comprehends knowledge acquired of facts after the execution of a policy, which, unless waived, would avoid it, as well as of inaccuracies of statements by the applicant and of the existence of other facts prior to the execution of the policy, the omission to state which would otherwise vitiate it.

3. Where a policy of insurance as issued does not conform with the contract which it purports to evidence a court of equity may reform the instrument.

4. Where a Court exercises the functions of both law and equity a reformation may be had at the same trial where a recovery is sought under the contract in an action at law.

.5. As the purpose of the action for reformation is not to vary or con-

tradict the contract of the parties, but to preclude the party who had framed it from relying upon incorrect recitals to defeat it when he himself had drafted these recitals and was morally responsible for their truthfulness, parol evidence is admissible to show that the contract really made had not been correctly incorporated into the instrument by accident or mistake in framing it.

6. Where the insurer denies all liability on the ground that no valid contract exists and refuses to pay, it is useless and unnecessary to make the preliminary proof of loss.

7. The defense of fraud and false swearing in a statement of loss requires that the swearing must not only be false, but knowingly and wilfully done with intent to cheat the company. So a discrepancy, even if it be material, between the statements of the assured under oath in his proof of loss, and those made at the trial, do not constitute the false swearing that works a forfeiture of all claim under the policy; nor does an overstatement of the value of the property work such a forfeiture for a great difference of opinion upon values may well exist with perfect honesty of all the parties differing.

Appeal from Civil District Court, Division "D."

F. E. Rainold, for Plaintiff and Appellee.

O'Donnell & Hollingsworth, for Defendant and Appellant.

MOORE, J. Plaintiffs are husband and wife, and they joined in a suit against the defendant company to recover of it the indemnity guaranteed under a contract of fire insurance, and also the return of a sword and one scabbard not covered by the policy which the defendant is alleged to have unlawfully taken possession of, and refuses to return.

It is alleged in the petition that the policy was erroneously made out in the name of Mrs. S. B. Tarver, instead of in the name of her husband, Samuel B. Tarver, but that the premiums' receipt book of the insurance company was correctly made out in the name of the husband, who regularly paid the premiums upon the policy; that immediately after the fire which destroyed the property covered by the policy, the manager of the defendant company personally investigated the loss and made full inquiry, and found that petitioners "had lost many times the amount for which they were covered by the policy, and by his action and conduct rendered proof of loss unnecessary and waived the right of the company to demand them"; that the company, acting for and on its behalf, "having found in a house of a neighbor a Masonic sword and scabbard, an article not covered by the policy, took possession of same without the knowl-

edge and consent of plaintiffs and holds and refuses to return same. Judgment is prayed for for the amount of the policy and for the return of the sword, or in default of its return, for its value.

The answer admits the issuance of the policy, but avers its absolute nullity as to both plaintiffs, and denies all liability thereunder to either. It specially denies that the defendant company entered into any contract with S. B. Tarver. It avers that he is not the sole and unconditional owner of the property covered by the policy and that neither is Mrs. S. B. Tarver, with whom alone it contracted, the sole and unconditional owner thereof. It further avers that neither of the plainaiffs has furnished any proper proof of loss; that "the documents and statements of loss and proof of loss are false and exaggerated," and that Mrs. S. B. Tarver has been guilty of false swearing, following the fire," and that the officer alleged to have waived proof of loss had no authority so to do. With regard to the sword and scabbard, the defendant admits its possession thereof, and makes no claim of right to retain same. There was judgment in favor of the plaintiffs as prayed for, and defendant appeals. The policy was for the sum of $800, and is stated to cover the household and kitchen furniture and other personal property situated in a certain dwelling house, which the evidence shows was occupied as a residence by plaintiffs, in the city of New Orleans. It names Mrs. S. B. Tarver as the insured who, it appears, in the absence of her husband from the city, he being a "traveling salesman," conducted the negotiations looking to the insurance of this property. Her husband, owing to the frequent and prolonged absences and being thus unable to give it his personal attention, had intrusted to his wife the business of effecting fire insurance on the property, and had directed her to take out the policy in the defendant company for the reason that he was personally known there, and had been requested to do so by a stockholder in the Company. Acting under these instructions, Mrs. Tarver called at the office of the Company some time in the latter part of July or the early part of August, 1907, and stated to the person whom it is shown had full charge and management of the Company's affairs, together with the right in him vested to issue policies and to adjust losses, and whose official designation was that of "Manager," and stated to him that she had called at the request of her husband to take

out a fire policy in the Company for $800 on *their* property."

Thereupon the Manager visited the premises, and after a careful personal inspection of the effects which were to be insured, and after stating that his assessment of their value was between $1,200 and $1,500, agreed to issue the policy for $800, suggesting, however, that the amount of the policy, considering the real value of the property, might be made larger if desired. Thereupon, to-wit, on the 8th day of August, 1907, the policy in suit was made out by the Manager and by him delivered to Mrs. Tarver, who at the same moment handed to her a premium receipt book "in which he entered a receipt for the first premium paid, and which contains the Company's entries of all subsequent payments of premiums. This book has written on it by the Company, under the head "Name of Insured," the name of the husband, S. B. Tarver, and under the head of "Policy No., the No. 1414, which is the number of the policy used on.

No written application for insurance was made by, or required of Mrs. Tarver. She was asked no question concerning the ownership of the property, and she made no representations whatsoever with regard to same, except, as stated above, she informed the agent that she wanted, at her husband's request, to take out a policy "on their (hers and her husband's) property." The Manager of the Company testifies that he knew at the time that Mrs. Tarver was a married woman; that the husband and wife were living together, and that he was personally acquainted with the husband. He admits that he knew that the property belonged to Mr. and Mrs. Tarver, that it was *"their* property,"* as advised by Mrs. Tarvis when she appealed for insurance, but that as it was the "common practice (of his company) to take applications from married women and to issue policies (in their names)," until that practice ceased after the Attorney for the Company had advised him to issue policies in such cases in the name of the husband, he "through ignorance or error on my (his) part," and having not yet been advised by the Company's attorney, issued the policy in accordance with "the common practice." *id est,* in the wife's name. He frankly states, however, that it "was the intention of the Company" in such cases, "in case of a loss, to pay the amount of the loss."

The evidence is conclusive that Mrs. Tarver gave the Manager of defendant Company full information on the subject of

ownership, that is, that the property belonged to her and her husband; it is made manifest that she relied on the skill, honesty and good faith of the Company's agent to fill out the policy correctly, and it is made clear that the failure to insert the ownership of the property and the husband's name as the person insured, if same is necessary, was for reasons operating exclusively upon the mind of the Company's agent, and not affecting Mrs. Tarver's own actions. Can, under these facts (and pretermitting for the moment, consideration of the alleged want of proof of loss and false swearing), either or both of the plaintiffs maintain an action on the policy? The objections urged by defendant, aside from the two defenses passed over at this time, are: First, that the wife cannot recover because she is not the "sole and unconditional owner" of the property insured; and, second, that the husband cannot recover (a), because no contract was made with him, (b) because no reformation of a policy may be had, (c) because if a policy may be reformed it must be sought in a direct action brought for that purpose and cannot be set up in a suit brought to recover on the policy, (d) because in no event can parol evidence be administered in order to change, or alter, or contradict the written contract, and (e) because even if the policy may be thus reformed the husband is not the sole and unconditional owner of the property.

The policy stipulates, *inter alia*, that it shall be void "in the event the insured be other than unconditional and sole owner."

The property, it is shown, was acquired by purchase during the existence of the community, but whether it was bought in the name of the wife or of the husband is not disclosed. It was paid for partly with the funds of the community and partly with the wife's paraphernal funds which latter were administered by the husband, as there is no prof that the wife had the separate administration of it. (C. C. 2385.) The property, therefore, fell into and belonged to the community. Burns vs. Thompson, 39 A. 377; Reid vs. Rochereau, 2 Woods 151.

The wife, hence, was not the "unconditional and sole owner" of the insured property.

In view of the fact, however, that the insurer had full knowledge that Mrs. Tarver was not the "unconditional and sole owner" of the property and had been so voluntarily in-

formed by her, can the company now deny her right to recover on the ground that she was not the "unconditional and sole owner"? We think not.

It is rock-bedded in the judgment of this country that if the insurers, with full knowledge of facts which would avoid the policy, nevertheless execute and deliver it, or if, after its delivery, they acquire knowledge of such facts and subsequently treat it as valid and binding, by any acts, words or conduct which might reasonably lead the insured to suppose himself to be still insured, they will have waived the defect and be estopped to assert it.

Richmond vs. Niagara Falls Ins. Co., 69 N. Y. 230.
Bennett vs. Ins. Co., 81 N. Y. 274.
Van Schoick vs. Ins. Co., 68 N. Y. 134.
Smith vs. Commonwealth Ins. Co., 49 Wis. 322.
Shaw vs. Ins. Co., 1 Fed. Rep. 761.
Diebold vs. Phoenix Ins. Co., 33 F. R. 807.
American Ins. Co. vs. Mahone, 21 Wall 152.
Joiceon Ins., Vol. 1-475-476.

Thus, in Key vs. Ins. Co. (Iowa), 41 N. W. Rep. 614, the insured stated in his application that he was the sole owner of the property, and that it was not incumbered. In fact, he only had a bond for a deed, and had paid no part of the purchase price; but all the facts were disclosed to the agent, who told him that the unpaid purchase money did not constitute an encumberance, and it was *held* that the company could not avail itself of a clause in the policy that the application should form part of it, and that any false statement as to encumbrances would avoid this policy.

So in Liverpool and London and Globe Insurance Company vs. Eude, 65 Tex. 181, where the agent delivered the policy with full knowledge of the state of the title and the company took the premium, it was *held* that the company could not deny the right of recovery, on the ground of an ownership other than entire, unconditional and sole ownership.

"It has, in fact, been very generally held that knowledge by, or notice to the agent, of the inaccuracy of a statement in the application upon which a policy is issued after such notice or knowledge, binds the company and prevents them from availing themselves of the inaccuracy in defense, some of the cases regarding the facts amounting to a waiver, and others

as invoking an estoppel in pais." May on Insurance, Vol. 1, Sec. 143.

And so it is held that notice to a general agent is notice to the company. And this comprehends knowledge acquired of facts after the execution of the policy, which, unless waived would avoid it, as well as of inaccuracies of statement by the applicant, and of the existence of other facts prior to the execution of the policy, the omission to state which would otherwise vitiate it. Union Ins. Co. vs. Winkinson, 13 Wall 222; Diebold vs. Ins. Co., 33 F. R. 807; 38 Ill. 166; 75 Ind. 1; 55 N. Y. 110; 18 N. Y. 392; 109 Penn. St. 157; 13 Wall (U. S.) 222; 21 Wall (U. S.) 152; 14 F. R. 272.

The objection, therefore, that Mrs. Tarver cannot maintain an action on the policy because she is not the unconditional and sole owner is, under the circumstances just stated, no defense, although it is that she, nevertheless, cannot sue thereon in her own name, and for her own use and benefit, but for an entirely different reason, to-wit: because it was the clear intention of the parties at the time of the issuance of the policy that the insured thereunder should be the one who would be legally entitled to effect insurance on the community property, to-wit: the head and master of the partnership or community of gains, S. B. Tarver. This is abundantly established by the testimony. That the policy was made in the name of the wife, the agent who issued it admits it was so made out by "error or ignorance," and on his own motion following the "common practice" of his company in cases similarly situated, but always with the intention on the part of the company to construe such policies as really for the benefit of the head of the community who was to be regarded as the insured.

As the head and master of the community, the husband who, as such, has the administration of its effects; who may dispose of the revenues which they produce and may alienate them by an onerous title, without the consent and permission of his wife (C. C. 2404), may not be doubted to have an insurable interest in the entire community property. Neither may it be doubted that where a policy of insurance as issued does not conform with the contract which it purports to evidence, a court of equity may reform the instrument; nor that where a court exercises the functions of both law and equity a reforma-

tion may be had at the same trial where a recovery is sought under a contract in an action at law and that, as the purpose in such cases—actions for reformation—is not to vary or contradict the contract of the parties, but to preclude the party who had framed it, from relying upon incorrect recitals to defeat it, when he himself had drafted these recitals and was morally responsible for their truthfulness, parol evidences is admissible to show that the contract really made had not been correctly incorporated into the instrument by accident or mistakes in forming it.

"When either party to a contract claims that the written instrument does not express the agreement made, application may be made to a court of equity for reformation and parol testimony may be produced to show that the contract, as actually agreed to by the parties, was something different from that expressed in the writing." Ostrander on Fire Ins., 11, p. 37; 1 Story Eq. Juris., Secs. 157-161.

"Parol evidence is admissible in action on Insurance policy, to show mistake by the agent in writing policy; to show that the policy had been taken out by one partner on the whole of the partnership property, and that the agent had failed to insert the other partner's name in the policy." Manhattan Ins. Co. vs. Webster, 59 Penn. (State) 227. "We do not doubt that a policy of insurance may be reformed where it is demonstrated by legal and exact evidence that there has been a mistake in filling it up which has violated the understanding of both parties." Davega vs. Ins. Co., 7 A. 228. "A policy issued by mistake to a man who had not title to the premises insured, which were owned by his wife, will be reformed and enforced in her favor, where the agent who issued it, and who was wholly relied upon by the insured to have the papers in proper form, knew the facts as to title." German Ins. Co. vs. Gueck, 130 Ill. 345. "In States where the same court exercises the functions of both law and equity a reformation may be asked for, and had at the same time where recovery is sought under the contract in an action at law." Ostrander Fire Ins., 28, P. 106.

So far as concerns the defense that plaintiffs have furnished no due proof of loss, it would be sufficient answer thereto to say that in view of the fact that the defendant ignores all liability after notification of the loss on the ground just discussed, it was useless and unnecessary to make the preliminary

proofs, 24 A. 349; A. & E. Ency. of Law (O. S.), Vol. 7, p. 1054; May on Ins., 469. But, besides this, the Company's agent made a thorough examination of the premises and its authorized agent had adjusted the loss which the Company subsequently refused to pay on the ground as stated that there existed no valid contract with either of the plaintiffs. Ibid.

Sti'l further, it appears that every requirement of the defendant's agent with regard to proof of loss was complied with, but that as often as compliance was made the company would interpose additional objections. If full and complete proofs were not furnished, it was largely, if not exclusively, owing to the conduct and declarations of the defendant Company, which seemed to be throwing all obstacles in the way.

The defense of false swearing is not sustained. At most it may be said that there was a discrepancy between their several statements of the amount of loss, but this was not done knowingly and wilfully, with intent to cheat the Company.

"The defense of fraud and false swearing in a statement of loss requires that the swearing must not only be false, but knowingly and wilfully done with the intent to cheat the company. And where such statement was only made as a preliminary to suit, after the insurer had made full investigation, and after it had finally refused to settle the loss and after negotiations for such settlement have been finally broken off, exaggeration of the loss contained in such statement cannot be construed as having been made with the intent or expectation to deceive or mislead the company." Doll vs. Firemen's Ins. Co., 35 A. 98.

"A discrepancy, even if it be material, between the statements of the assured under oath in his proof or loss, and those made at the trial does not constitute the false swearing that works a forfeiture of all claim under a policy of insurance; nor does an overstatement of the value of the property work such a forfeiture, for a great difference of opinion upon values may well coexist with perfect honesty of all the persons differing. The assured may have sworn to what he believes to be true, but which, nevertheless, is false, and his policy would not thereby be forfeited. To work such forfeiture the assured must knowingly and intentionally, and therefore, fraudulently, have sworn with the intent to deceive the insurer and get from him a value

—67—

falsely put upon the property." Erman vs. Mutual Ins. Co., 109 La. 525.

The judgment appealed from is affirmed.

November 23, 1908.

Rehearing refused January 11, 1909.

Writ denied by Supreme Court February 2, 1909.