## No. 9814.

### STAUFFER, MACREADY & CO. VS. HENRY R. MORGAN.

The presumption of law is that property purchased during the marriage, whether in the name of both or either spouse, is community property.

When, however, the property is bought in the name of the wife, she has the faculty of rebutting this presumption by showing that she purchased the property by the investment of her paraphernal funds, which were administered by her separately and apart from her husband.

She carries the burden of proof of three crucial facts: (1) Paraphernality of the funds; (2) administration thereof separately and apart from her husband; (3) investment by her.

Where a man, on the eve of marriage, gives to his intended spouse a check for $20,000 on a banking firm, the donation may be incomplete and revocable at any time before actual collection of the check by the donee; but when she has presented the check and the drawees have honored the same by placing the amount to her individual credit, under her instructions, the donation is complete, and the funds are her paraphernal property. The case is not affected by the fact that the husband was a member of the banking firm.

The firm is a legal entity, separate and distinct from its members, and the possession, custody and obligation resulting from such deposit were those of the firm, and not of the husband, as a member.

When the account thus opened with the wife is kept in her name and subject to her exclusive order and control, without interference by her husband, this constitutes a separate administration by her.

The property here in controversy, having been bought in the name of the wife, by her consent and direction, and having been paid for by her check against her account with the bankers, and having always been regarded and treated as her separate property, it cannot be subjected to the debts of the husband or of the community.

The purchase price of property acquired by an agent in the name of a married woman, with her husband's authority, is considered as paid out of her funds, although the agent drew on the husband for the same, when the evidence shows that the check was endorsed by the husband to be paid out of his wife's money, and she herself directed her bankers to do so, and that it was thus done.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

*Farrar & Kruttschnitt* for Plaintiffs and Appellants:

I.

Property purchased in the name of either spouse during marriage becomes an asset of the community (C. C. 2402); and the fact that a title is taken in the name of the wife does not make even a beginning of proof that the property is paraphernal.

II.

In order that property acquired during the community in the name of the wife be considered paraphernal, it is absolutely essential that three crucial facts should concur, viz:

(a) Paraphernality of funds.

(b) Separate administration by wife.

(c) Investment by her. Bachino vs. Coste, 35 Ann. 570; Santmanat vs. Soulé, 33 Ann. 612; Shaw vs. Hill, 20 Ann. 531; Gonor vs. Husband, 11 Rob. 526; Torrell vs. Cutrer, 1 Rob. 367.

III.

A mere promise to give cannot be enforced under any system of jurisprudence. Delivery and acceptance are the essence of a donation. Succ. of Depouilly, 22 Ann. 97; Burke vs. Bishop, 27 Ann. 466; Byles on Bills, p. 198. § 123; Waite on Actions and Defences, vol. 3, p. 489.

IV.

While the law is undisputed that the husband may be the agent of the wife for the administration of her paraphernal funds, the law is equally well setttod that the agency in such a case must be express, public and clearly proved. The husband must act unequivocally *jure mandati* and not *jure mariti*. Miller vs. Handy, 33 Ann. 164; Trezevant vs. Sheriff, 38 Ann. 146.

*Nicholls & Carroll* for Mrs. P. O. Morgan, Intervenor and Appellee:

When a husband, having large means and being entirely solvent, makes a donation of money to his wife, which she reduces to possession, and when years afterwards a partnership to which he belongs becomes insolvent, a creditor of that partnership, holding a claim which arose long after the donation, has no interest in and cannot attack or question the precise form or manner in which the donation was made or the money paid. 5 N. S. 196; 11 Ann. 401; 12 Ann. 733; 10 Ann. 540; 13 Ann. 377; 21 Ann. 343; 10 Ann. 575; 21 Ann. 118; 24 Ann. 597.

Where a husband, prior to his marriage, gives to his intended wife a check on a banking

firm of which he is a partner, and where this check is honored by said firm and the amount thereof is placed to the individual credit of the wife, who draws on it at will on her own signature, solely, such action on the part of the husband constitutes a full and complete donation, and the action of the firm operates a complete payment of the check, and the amount represented by the check becomes the paraphernal property of the wife. 26 Ann. 189; 32 Ann. 1252; 6 Ann. 547.

And where, under these circumstances, property is purchased in the name of the wife with funds standing in her name on the books of the partnership, such property becomes her paraphernal property, and creditors of the partnership on a claim arising subsequent to such purchase—creditors who make no pretense of fraud, simulation or injury of any kind—have no right to question or attack the wife's title. 6 Ann. 547: 17 Ann. 27; 19 Ann. 516; 21 Ann. 5; 33 Ann. 894; 5 N. S. 196; 11 Ann. 401; 12 Ann. 735: 32 Ann. 1252; 26 Ann. 189.

A donation need not necessarily be by notarial act. 2 L. 21, 41; 14 Ann. 96; 17 Ann. 231; 33 Ann. 163.

An act, though void as a sale, because without a price, may, when there is no just cause for its annulment, be valid in another form, as an exchange, donation·or pledge. Nor can it be questioned by third persons, unless, not only simulated or fraudulent, it also prejudice. Henn. p. 1326, No. 12; Wolf vs. Wolf, 12 Ann. 429.

Where a partnership to which a husband belongs honors a draft drawn by him and opens an account with the payee, who draws against the same at will and has absolute control over it, and where there is no charge of fraud, simulation or injury, the partnership and its individual members (and their creditors) are estopped from contesting the title of the payee to the funds, particularly on a question of form.

Where a party undertakes to act for another and takes title to property in the name of such person, and where such action is approved and ratified, neither the party acting nor any third party (not charging fraud, simulation or injury) can question the authority of the party acting or the evidence upon which he acted. 4 M. 447; 6 N. S. 511; 13 Ann. 18.

Where a person creates an interest on behalf of another, he cannot destroy that interest without giving the other party an opportunity to accept or reject it; and when it has been accepted, no third person (not charging fraud, simulation or injury) can contest such interest. 14 Ann. 632; 4 M. 409; 33 Ann. 324.

The question of the administration of the paraphernal property of the wife is totally irrelevant, except where that question affects the ownership of the funds invested by the wife in her name.

---

The opinion of the Court was delivered by

FENNER, J. Plaintiffs, creditors of the insolvent banking firm of M. Morgan's Sons, of New York, whereof defendant was a member, sued the latter by attachment, under which two pieces of real estate standing in the name of Mrs. Penelope O. Morgan, wife of defendant, were seized.

Mrs. P. O. Morgan intervened in the suit, claiming the property under seizure as her paraphernal property.

Plaintiffs answered her intervention, averring that the property had been acquired during marriage under the *regime* of the community of acquests and gains, and formed part of the community and was liable for its debts.

From a judgment in favor of the intervenor maintaining her separate ownership of the property attached, this appeal is taken.

The plaintiffs' case presents no feature of the revocatory action or the action *en déclaration de simulation*. It rests simply on the proposition that the property belongs to the community and is liable for its debts, *because* purchased during the marriage. Such is undoubtedly the presumption of the law, whether the purchase was made in the name of both or either of the spouses.

But when, as in the instant case, the purchase is made in the name of the wife, she has the faculty of rebutting this presumption by proof that she purchased the property, as her separate property, by the investment of her paraphernal funds, which were administered by her separately and apart from her husband.

As tersely stated by plaintiffs' counsel, the crucial facts are: (1) paraphernality of the funds; (2) administration thereof by her separately and apart from the husband; (3) investment by her. Of these facts she carries the burden of proof.

So far as one of the properties, known as the coal yard, is concerned, her proof is so conclusive that plaintiffs abandon the contest as to it.

The other, designated as the Ocean Saw-mill property, is alone left in dispute.

The evidence shows that on December 29, 1880, Henry R. Morgan, at that time a millionaire, being about to leave New York for New Orleans to marry the intervenor, drew a check on his firm of M. Morgan's Sons, of which he gave notice to the firm, stating that it was intended as a present to the lady whom he was about to marry.

On January 15, 1881, the day of the wedding and before the ceremony, he presented and delivered this check to her.

She endorsed the check and forwarded it by mail to the firm of Morgan's Sons, with request to honor the same and place the amount at her individual credit.

The firm took up the check, opened an account on their books in the name of Mrs. Morgan and passed the amount to her credit.

On the 25th of April, 1881, defendant made another present to his wife of $15,000, which was placed by the firm, under his orders, to the same account.

The evidence is positive and undisputed that in the conduct of this account the firm dealt with Mrs. Morgan precisely as with any other depositor, allowed her interest on her balances, and honored her checks, which she drew at will in her own name without any authorization of her husband, and that he never, in any manner, controlled or interfered with it.

In June, 1881, defendant, being in New Orleans, was informed of an

opening for an investment in this Ocean Saw-mill property, and concluded to make it. He authorized Mr. Jno. C. Morris, president of the Canal Bank, to accept the sale and draw on him for the price. But, after reaching New York and seeing his wife, it was determined that she should purchase the property and pay for it as an investment of her separate funds. Accordingly, Mr. Morris was instructed to take the title in the name of Mrs. Morgan, and this was done and he accepted it as her agent. He drew on Mr. Morgan for the price, and when the draft reached New York, Mrs. Morgan wrote across the face of it: " M. Morgan's Sons will please pay this draft, and charge to my account. (Signed) P. O. Morgan." The payment was made accordingly and charged to her account, which then had at its credit the amount of $35,597.62.

The property yielded no revenues, and Mr. Bradish Johnson, who was a co-owner, attended to the paying of taxes and expenses on it, and she repaid him the amount of her share by checks on her own account.

On these facts, the plaintiffs contend :

1st. That the funds from which the payment was made, to wit: the amount at her credit with M. Morgan's Sons, were not paraphernal funds, because there was no valid and complete donation thereof by the defendant to his wife, because the manual delivery of a check of the donor to the donee is not a completed donation but a mere power of attorney to collect the check, revocable at any time before actual collection or by the death of the donor, and that the donation did not become effective until the check had been actually collected and the proceeds reduced to possession by the donee.

Granting the correctness of the proposition of law, we are satisfied that the presentation of the check to the firm on which it was drawn and the placing of the proceeds, under her instructions, to her credit, was an effective collection of the check and a reduction of the proceeds to her possession.

Counsel for plaintiffs admit that if the check had been drawn on any third person, or on a firm of which defendant was not a member, the presentation of it and passing of the proceeds to credit as instructed would have been a delivery to the donee. But he contends that the credit on the books of M. Morgan's Sons did not divest the possession of defendant, which continued, as a partner, jointly and severally with the other partners, and, therefore, did not constitute delivery. This is to ignore the elementary principle that a partnership is, in contemplation of law, a legal entity, separate and distinct from the individual

members; and that partnership possession, custody and obligation are different from those of an individual member. The distinction sought to be drawn by plaintiffs' counsel has no foundation in law and as little in reason.

2d. It is claimed that, for the same reason, the funds remaining in possession of a firm, of which the husband was a member, could not have been under the wife's administration, separate and apart from him. This position is equally unsound with the former one, and only serves to expose more forcibly the unreasonableness of the contention. Certainly, a wife who has paraphernal monies in her possession is not bound to carry them in her pocket. She may deposit them with any banker, and, if there is a bank or banking firm with which her husband is connected, that should be a reason for preferring such one to another. Her funds, at her credit with such bank or bankers, remain as much under her control and administration as elsewhere. Her husband, though a member of the firm, would have no power or authority to destroy the right of his wife to control the funds, or the duty of the firm to respect her orders.

3d. Plaintiffs claim that the investment in this property was not made by the wife, but by the husband. It is true, no doubt, that the original design was that the husband should purchase. But it is perfectly clear that, before the consummation of the transaction, with the joint consent of both husband and wife, this design was changed into an actual and bona fide purchase by the wife, for her separate account, and with her paraphernal funds. There is nothing in the slightest degree suspicious about this transaction ; · no suggestion of, nor motive for, any fraud, simulation or concealment. The husband was a very rich man, entirely free from financial embarrassment. Circumstances which, in a different case, might furnish ground for suspicion, have here no significance whatever. On the face of the transaction and under the uncontradicted evidence, the purchase was made in the name of the wife, under her authority; the price was actually paid by her with her paraphernal funds, and the property has, ever since, been regarded and treated as her own.

We think she has fully discharged the burden of proof resting on her and has successfully rebutted the presumption of law that this property purchased during the marriage was community property.

Judgment affirmed.

ON APPLICATION FOR REHEARING.

BERMUDEZ, C. J. The only ground on which the application rests

is that the property was acquired with the funds of the husband, obtained on his credit, and that even if the obligation of the husband was subsequently extinguished with the funds of the wife, still the acquisition was made with the funds of the husband and the property belongs to the community.

The evidence shows that, to reimburse himself, Morris drew on Morgan, the check passed through the Canal Bank, who endorsed it over to Morgan's Sons for collection, who collected the amount, not from *Mr.*, but from *Mrs.*, Morgan.

When the check got to New York, Mr. Morgan, instead of paying it, endorsed it: " *Charge Mrs. P. O. Morgan's account. Henry Morgan.*" It was also endorsed by Mrs. Morgan: " *Morgan's Sons will please pay this draft and charge to my account. P. O. Morgan.*"

The account of Mrs. Morgan then balanced a larger amount in her favor.

The check was accordingly paid and charged up to her account.

The fact is insignificant that the check was endorsed by Henry Morgan, directing it to be charged to his wife's account. It repels all idea that the check was paid out of *his* funds, and as it was honored out of Mrs. Morgan's funds, the fact of payment by her is conclusive in her favor and against all adverse interest.

Rehearing refused.