Statement of the Case.
MONROE, J.
In January, 1902, the plaintiff obtained judgment against the defendant for $541.92, with interest, as the balance due upon defendant’s note given in part payment of the purchase price of two lots of ground on Gaiennie street, in this city, which lots, having been sold under executory process, had realized that much, less than the amount of the note; and she thereupon caused execution to issue, under which there were seized two pieces of real estate, adjoining each other, on Coliseum street, designated as lots “B” and “C,” and standing in the name of the defendant’s wife, who thereupon enjoined the seizure, setting up title and praying for judgment maintaining the injunction. To this the plaintiff answers, denying that the property belongs to Mrs. Barry, and alleging that it belongs to the defendant in execution.
It appears from the evidence that upon August 1, 1900, by an act which recites that she purchased with paraphernal funds, Mrs. Barry bought lot C from John E. Breaux for $2,400, of which $350 was paid in cash, and for the balance of $2,050 the purchaser gave her note, secured by mortgage, and payable in one year, with interest at 8 per cent. This act recites that the property in question had been purchased by Breaux from George W. Barry, June 19, 1900.
It further appears that upon the same day (August 1, 1900), by an act containing a similar recital as to the character of the funds used, Mrs. Barry bought lot B from the Teutonia Loan & Building Association, for $3,-000, represented by a promissory note for that amount, dated July 20, 1900, and made payable on demand, with interest at the rate of 8 per cent, per annum, subject, however, to the following conditions as expressed in the act of sale, to wit:
“The said purchaser hereby binds herself * * * to well and truly pay said note and interest * * * in such sums, monthly, as will amount, in each and every year, to ten per cent, of the principal sum aforesaid, and also, in monthly installments, a sum, amounting, in each and every year, to the annual interest, at the rate of eight per cent, on said principal, * * * said interest to be calculated on the balance due on the principal after deducting payments on account as hereinbefore stipulated. * * * And the said purchaser hereby consents that, if, at any time, default shall be made in the payment of the monthly installments of principal or interest and the same shall remain unpaid for the space of three months, * * * then, and in such case, the whole principal debt, with interest, or any balance thereof that may remain unpaid, shall immediately, thereupon, become due and exigible.”
Both of these acts contain the usual clauses obligating the purchaser to insure the property, pay the taxes, etc. It further appears that at the date of this transaction there stood in 'Mrs. Barry’s name a piece of real estate on Religious street, valued at $2,000, and renting for $20 a month, which had belonged to the succession of her father, and which had been acquired by her, partly by inheritance and partly by purchase, during her marriage,, and the record does not suggest that she had any other resources. It further appears that at the date of the trial of this case (May 31, 1902) the note for $2,050, given in part payment of the price of the property purchased from Breaux, and which had matured August 1, 1901, was wholly unpaid, both in principal and interest, but that there had been no default in the payments to the building association, which, Mrs. Barry testifies, had been made from rents of that and other property. There was judgment in the district court rejecting the demands of the plaintiff in injunction, and she has appealed.
Opinion.
The presumption of law is that property purchased during the existence of the community, whether in the name of the one or the other of the spouses, belongs to the community, and, where the wife claims it as separate estate, the burden rests on her to establish, by proof, dehors the recitals of *779 the act by which it has been acquired, .(1) the possession of some paraphernal funds under her administration, and available for investment, (2) that the cash portion of the price bears such a relation to the whole as to make the property purchased sufficient security for the credit portion, and (3j that her paraphernal property and revenues are such as to enable her to make the purchase with reasonable expectation of meeting the deferred payments. Miller v. Handy, Sheriff, 33 La. Ann. 169; Stauffer & Macready v. Morgan, 39 La. Ann. 632, 2 South. 98; Burns v. Thompson, 39 La. Ann. 377, 1 South. 913; Bachino v. Coste, 35 La. Ann. 570; Bartels v. Souchon, 48 La. Ann. 783, 19 South. 941; Nouvet v. Imp. Co., 49 La. Ann. 37, 21 South. 170; Jordy v. Muir, 51 La. Ann. 60, 25 South. 550. In the cáse at bar, the purchase from the building association was made entirely on credit; and, on the $2,400 agreed on as the price of the property purchased from Breaux, but $350 was paid in cash, so that only 6ya per cent, of the $5,400 called for by the two transactions has been paid in cash, and, for the balance, the wife has pledged the property purchased and her credit. She, however, has no credit beyond that to which she may be entitled by reason of the possession of paraphernal property and revenues, and she is not permitted to use that beyond reasonable limits. The learned counsel by whom she is represented, with a view to demonstrating that she had sufficient paraphernalia to justify the purchases in question, present the court with this calculation:
Revenue from Homestead property.. $ 600 00
“ “ Breaux property .... 540 00
“ “ Religious St. property 240 00
$1,380 00’
Deduct: Taxes, at 3%.....$222 00
Int. on Breaux note...... 164 00
Installments to Bldg. Assn. 540 00 926 00
Balance of Revenue............$ 454 00
There are some errors and omissions in this calculation. For instance: Mrs. Barry testifies that the Breaux property rents for $42.50 per month, or $510 a year, instead of $540; that, from Jan. 1, 1901, until April, 1902, she, herself, occupied one-half of the building association property, the rental value being $25 per month; and the counsel make no deductions for insurance, repairs. etc., though the purchaser is bound, by her contract, for the one, and, by necessity, for the other. The calculation, at least for the year 1901, might, perhaps, therefore, be stated as follows:
Revenue ................. $1,350 00
Deduct: Rental value of property occupied by self ........ $300 00
222 00
“ on 04value 55 50
“ Repairs, 1% on 04
value........ 55 50
“ Interest on Breaux note........... 164 00
“ Installments to B. & L. Assn...... 540 00 1,337 0(?
Bal. of revenue................ $ 13 00
It must be remembered, however, that the note of $2,050 fell due at the end of the first year, from which it would appear that the plaintiff in injunction must then have fallen $2,037 short of meeting her obligations, and that she did worse is evident from the fact that she paid neither the note nor the interest. This condition would'not, of course, be improved if she should be obliged to reduce the rent of the houses, or should find herself without tenants. It is said that the law relied on by the defendant in injunction is intended rather for the relief of the wife than for the protection of the creditors of the husband. That is no doubt true to some extent, but the law must nevertheless operate for the benefit of whom it may concern. In a well-considered case, in which it was successfully invoked for the benefit of a married woman, our predecessors in this court, after announcing the conclusion that “the wife is required, not only to prove that she had paraphernal effects at her disposal, but also that they were ample to enable her, reasonably at least, to make the new acquisition, otherwise the contract will be treated as a contract of the community,” added, “Such, without doubt, would be the result in a contestation between the creditors of the husband and wife, and we see no good reason to depart from the principle, in the converse of the proposition, by denying to the wife the privilege of showing the true character of the contract,” etc. Bouligny v. Fortier, 16 La. Ann. 209.
It is suggested that the transaction with the building association is withdrawn from *781 the dominion of the law and jurisprudence, which might otherwise he applicable, by Act No. 74, p. 88, of 1894, entitled “An act to authorize any married woman to subscribe for, withdraw or transfer, stock of building, homestead or loan associations, and to deposit funds with and withdraw th'e same from, any such association, without the assistance or intervention of her husband.” We find nothing in this act authorizing a married woman, without means, to bind herself by the purchase of real estate, or which in any way enlarges her capacity in that respect. On the contrary, the act expressly provides that nothing in it shall “be taken or deemed as authorizing any married woman to buy or sell real estate without the authorization of her husband.”
It is also suggested that the plaintiff in injunction should at least be allowed to recover so much of her paraphernal funds as she may actually have invested in the property seized. It is sufficient to say, in answer to this, that her right to such recovery is not an issue in this case. If it be true that the property in question belongs to the community, so, likewise, do the revenues. Whether the $350 cash paid on the Breaux property were paraphernal funds, or whether any portion of the revenues derived from the Religious street .property was used in paying for the property seized, and, if so, whether the whole of that revenue was paraphernal, are questions which are not concluded by the judgment appealed from, and which we do not decide.
Judgment affirmed.
BREAUX, J., takes no part.