———————o———————

No. 6253.

## VICTOR CEFALU vs. HATTIE HOLLOWELL.

### Syllabus.

One cannot enjoin the seizure and sale of property which he does not own and in which he has no interest.

The wife has no authority to enjoin the seizure and sale of property which belongs to the community.

The wife during community can purchase property in her own name and make it paraphernal. But in order to do so she must satisfy two conditions. In a sale where cash has been paid by her, she must prove that the payment was made with paraphernal funds. In a credit sale she must show that her revenues from the property purchased and from other sources will justify a reasonable expectation that they will be sufficient to enable her to meet the deferred payments.

In the absence of such proof the purchase is for account of the community and the husband alone, and not the wife, is liable for the notes furnished by the wife for the credit portion of the price.

Appeal from the Civil District Court for the Parish of Orleans, Division "A," No. 101,483. Honorable T. C. W. Ellis, Judge.

E. A. Parsons, Cage, Baldwin & Crabites, for plaintiff and appellee.

— 134 —

F. C. Marx, for defendant and appellant.

Dinkelspiel, Hart & Davey, W. S. Parkerson, attorneys.

His Honor, JOHN ST. PAUL, rendered the opinion and decree of the Court, as follows:

This is a suit to enjoin the seizure and sale of two properties mortgaged by the defendant. The facts are as follows:

By an act before E. A. Parsons, notary, dated June 29th, 1909, J. R. LeGallez, acting for E. A. Parsons, sold to the defendant, Hattie Johnson, wife of Jacob E. Hollowell, a lot of ground on Monroe, now Teche, Street, in Algiers, for the price of $480, and at the same time loaned her the sum of $420 to erect certain buildings on said lot; the purchase price was stated to be $1,100, of which no part was paid cash; the act recited a nominal payment on account of $65, which, however, had not been paid; in order to secure the payment of the purchase price, made up of $480 and the reimbursement of the loan of $420, and the payment of a discount of $90 agreed on, and charges for examining the titles and passing the acts and certificates and recording amounting to $44.80, making in all the sum of $1,034.80, a vendor's note of $1,035.00 was made and subscribed by the defendant with the authorization of her husband. But inasmuch as this lot, even with the projected improvements, was not sufficient in value to secure the payment of this note, the defendant was made to further secure its payment by an additional mortgage upon a lot on Pacific Avenue, which she had inherited from Mary Williams and was her paraphernal property. This note was not paid at maturity nor two years afterwards. The defendant had paid only $54 on account. The improvements on the Monroe Street lot had burnt, and E. A. Parsons had collected the

policy of insurance, $745.80, for which he gave the defendant credit after deducting $50 for his fee. On July 12th, 1911, he made a further loan of $500 to defendant for rebuilding; this sum together with $511.00 balance due on the note of $1,033, and $143.80 fees and costs charged for settling the Succession of Mary Williams, and with other costs of acts, and another discount of $125, likewise agreed upon, raised the indebtedness charged to defendant to $1316.20. In order to secure its payment the defendant did, by act of E. A. Parsons, notary, dated July 11, 1911, sell to J. R. LeGallez for the nominal consideration of $900 the two properties on Monroe Street and Pacific Avenue, on the next day, July 12, 1911, the same J. R. LeGallez sold back to defendant the same two lots for the price of $1,316.20, made up as above, for which she gave her note secured by vendor's privilege.

The defendant did not pay this note at maturity, July 12th, 1912, nor did she pay the city taxes for the year 1911 on the Pacific Avenue property.

On August 12th, Victor Cefalu, plaintiff herein, alleging himself the owner of said note of $1,316.20, filed suit thereon against the defendant, Hattie Johnson, wife of Jacob Hollowell, and obtained an order for executory process and the sale of the two properties above mentioned. No writ was executed under said order, but on June 2nd, 1912, nearly a year afterwards, Hattie Hollowell enjoined the execution of said order, alleging that Cefalu was not the owner of said note, that the note represented debts due by her husband for which she was not responsible, and that she was entitled to an accounting by E. A. Parsons, and she prayed that Cefalu be forever enjoined from seizing and selling said properties to pay said note, and for judgment ordering Parsons to render

her an account of their transactions. There were also charges of inveigling, defrauding and over-reaching, which we consider unnecessary to consider.

Cefalu answered, averring his ownership and acquisition of said note in good faith before maturity, and denying all allegation or knowledge of fraud.

Parsons answered and indignantly repelling all charges of fraud and narrating the facts substantially as stated above, and he filed numerous accounts by which it appeared that Hattie Hollowell owed him $42.40, which he claimed against her in reconvention.

There was judgment in favor of Cefalu dissolving the injunction, and in favor of Parsons granting him a judgment of $10.40 against Hattie Hollowell, and reserving the rights of Cefalu and Parsons to claim damages from Hattie Hollowell.

From this judgment Hattie Hollowell has appealed.

No amendment of the judgment has been asked by Cefalu or Parsons. -

It appears by an act before H. L. Sarpy, notary, dated April 25th, 1913, more than a month anterior to the date of the injunction sued out by Hattie Hollowell (June 2nd, 1913) that her property on Pacific Avenue, which she had inherited from Mary Williams, had been sold for city taxes of 1911, on January 6th, 1913, to E. H. Wharton-Davies, and that she ratified the sale for a consideration of $500. It is evident, therefore, that as regards this property, Hattie Hollowell has no interest to arrest its sale.

C. P., 15; 26 A., 699, 432; 43 A., 873 (879); 46 A., 151 (154); 52 A., 2042; 110 La., 581.

As regards the other property on Monroe Street, Hattie Hollowell argues that it is community property. If she

— 137 —

is correct, then she has no right to champion the interests of the community.

C. C., 2404 (2373); 9 A., 12; 104 La., 498; 52 A., 1127; 38 A., 188; 35 A., 159 and cases there quoted, 42 A., 990 (994).

The general rule is that all property purchased during marriage by either spouse is community.

C. C., 2402 (2371).

When, however, the husband or the wife have separate funds, they may, as an exception to the rule, invest them in property which then becomes paraphernal. But the essential condition is the ownership of separate funds in either spouse. The wife may even purchase on credit. But in order to do so, she must meet the following requirements laid down in the **Succession of Lewis, 45 A., 883**, and **Fortier vs. Barry, 111 La., 776**, and cases therein quoted, viz:

"1st: That she possessed some paraphernal funds under her administration and available for investment; 2nd: that the cash portion of the price bears such a relation to the whole as to make the property purchased sufficient security for the credit portion, and 3rd: that her paraphernal property and revenues are such as to enable her to make the purchase with reasonable expectation of meeting the deferred payments."

In the absence of such proof the purchase is for account of the community, and the husband alone, and not the wife, is liable for the notes furnished by the wife for the credit portion of the price.

10 L., 140; 12 R., 582; 2 A., 806; 29 A., 76; 32 A., 907; 34 A., 977, 1063 (1066), 16 A., 209, 51 A., 55.

The object of the law is twofold, to protect the wife against her own, or her husband's speculative tendencies, and to prevent the husband from concealing the funds of the community under the wife's name.

This case, on a small scale, illustrates the wisdom of the law. The defendant, Hattie Hollowell, without one cent of paraphernal funds in hand or available for investment, without the payment of one cent cash, even for costs of the act of sale, without proof of any reasonable expectation, in property or revenues, to meet the deferred payments, purchases a lot, entirely on credit, and to secure the price, mortgages not only the property purchased, but another property which was her separate paraphernal property. While she has received in money and services a consideration of about $1518 upon which she has reimbursed about $799 in money, she is sued upon a note of $1,316.20 still claimed against her, as a direct result of a purchase on credit of a lot valued at $480 in June, 1909. She is thus threatened with the loss not only of the lot originally purchased by her on credit, and improved by her, but of the other lot she inherited from Mary Williams, and which she mortgaged as security. The probabilities are, besides, that the two lots will sell for an amount insufficient to pay the note, leaving a large sum as a basis for a future claim against her in an ordinary suit.

Enough has been said to show that the purchase by Hattie Hollowell was for account of the community. Considering the second property as belonging to the community, she had no right or interest to arrest its sale.

It follows as a collorary that she is not liable for that portion of the note composing any part of the charges connected with that sale. The only part for which we

think she might be liable are the items making the sum of $143 for settling the succession of Mary Williams.

The Court below has allowed E. A. Parsons $10. He has not asked for an amendment of the judgment. We think he is entitled to that sum.

For the reasons above given the judgment is affirmed in so far as it dissolves the injunction and gives a judgment of ten dollars to E. A. Parsons.

Judgment affirmed.

Opinion and decree, January 18th, 1915.

Rehearing refused, February 17th, 1915.

Writ denied, March 24, 1915.