**FONTENOT v. STARK, Sheriff, et al.**

No. 1924.

Court of Appeal of Louisiana.
First Circuit.

Dec. 19, 1938.

C. A. Blanchard, of Donaldsonville, for appellant.

A. H. Reed, of New Orleans, for appellees.

OTT, Judge.

As payment for services rendered by him as attorney for the succession of J. B. Clark, C. A. Blanchard accepted notes from the widow of the deceased after the succession had been concluded. The widow had come into possession of some $22,000 worth of property (according to the valuations in the succession proceeding), and all of the property which the widow had acquired through the succession was invested in the purchase by her of the Mangham telephone exchange in Richland Parish. The plaintiff in this suit and the widow of the deceased Clark were married in May, 1932.

In July, 1934, plaintiff began the erection of a telephone exchange at Leeville, Louisiana, and in September of that year Blanchard secured a judgment against Mrs. Fontenot on one of the notes given him by her in payment of the fee in the Clark succession. In September, 1935, Mrs. Fontenot sold the. Mangham Exchange to the Avoyelles Telephone Company in consideration of the assumption by that company of certain past due taxes against the property, and the payment of certain judgments against Mrs. Fontenot which had been rendered against her. She also received from this sale $290 cash and a note for $710, payable in monthly installments of $25 each. So far as the record shows, Mrs. Fontenot derived no more from this original inheritance of some $22,000 other than the $1,000 represented by this small cash payment and the installment note.

In September, 1936, Blanchard had execution issue on his judgment against Mrs. Fontenot and caused to be seized "all of the rights, titles, interest and claims of Mrs. E. J. Fontenot in and to that certain telephone exchange, building, line, switchboard and telephone exchange operating under the name of the Leeville Telephone Company, situated in the Parish of Lafourche, Louisiana."

The plaintiff filed a petition asking for a restraining order and an injunction to restrain and enjoin the sheriff and the seizing creditor from selling or attempting to sell the property seized on the ground that the property was not the separate property of Mrs. Fontenot and subject to seizure for her separate debt, but that the said Leeville Exchange and all property connected with it belonged to the

community existing between plaintiff and his said wife; that the said telephone exchange was built in 1934 and 1935 with funds and labor furnished by the plaintiff, and that no separate funds of Mrs. Fontenot were used in building the said Leeville Exchange.

A restraining order was issued and the sheriff and the seizing creditor were ordered to show cause why a preliminary injunction should not issue. On the return day of the rule, the sheriff filed an answer stating that he had no interest in the matter except to execute the orders of the court, and he adopted as his defense all pleas, exceptions, and the answer filed by Blanchard, the execution creditor. The latter filed a motion to set aside and recall the restraining order with cost and attorney's fees on the ground that the petition did not show that plaintiff would suffer irreparable injury before notice could be given and a hearing had on the application; and for the further reason that the restraining order did not show the hour of its issuance, why it was granted and when it was to expire. The seizing creditor filed an exception of no cause of action, and after hearing evidence on the rule, the trial judge overruled the motion to set aside the restraining order and granted a preliminary injunction. No reference is made in this court to the motion to set aside the restraining order nor to the exception of no cause of action, and we assume that this motion and exception have been abandoned.

The answer of the seizing creditor was in effect a general denial of the claim made by plaintiff that the property seized was community property. The case is here on a devolutive appeal by the seizing creditor from a final judgment perpetuating the preliminary injunction on a finding by the trial court that the seized property was community property and not the separate property of the judgment debtor.

Plaintiff testified that he started building the telephone exchange at Leeville and a telephone line from that place to Golden Meadow in July, 1934, more than two years after his marriage to the judgment debtor; that he extended this line to Grand Isle in April and May, 1935. He further testified that he used in building this telephone system some $800 that he had when he married, and some $1,500 which he earned in an insurance business since his marriage; that he also received a monthly income from the telephone exchange and which was used in paying operating expenses of the exchange and in extending the telephone lines. He purchased all the material in his own name or in the name of the Leeville Telephone Company and secured a lease for the exchange in his name. He also made a report to the Public Service Commission of the ownership and operation of this Leeville Exchange and the rates charged, in which report he gave himself as the owner of the exchange operated in the name of the Leeville Telephone Company, and designated himself as the person for service of process.

It is to be observed that during the time that plaintiff was building and operating the Leeville Exchange in 1934 and 1935, Mrs. Fontenot owned as her separate property the exchange at Mangham, in Richland Parish. But plaintiff testified, and it was admitted that his wife would testify, that none of the money or property of Mrs. Fontenot was used in building the Leeville Exchange. As before stated, when Mrs. Fontenot sold the Mangham Exchange in September, 1935, she had several judgments against her; her taxes were delinquent, and she received only $1,000 in cash and a note out of that property. Of course, the revenues from Mrs. Fontenot's property at Mangham, as well as material from that exchange, could have been used by plaintiff and his wife in building the Leeville Exchange. And it could be assumed, at least as a probability, that the draining of the revenues and materials from the Mangham property belonging to Mrs. Fontenot in order to equip the Leeville Exchange, was the cause of the shrinkage in the value of the Mangham Exchange in so short a period of time. But there is no proof to support such an assumption. On the contrary, plaintiff and his wife deny that any of the Mangham property went into the Leeville Exchange.

There is evidence in the record that the Leeville Telephone Company made application to the War Department in December, 1934, for permission to lay a submarine cable for a telephone line under and across Bayou Lafourche, in which application plaintiff and his wife were designated as owners of the Leeville Telephone Company. And in November, 1934, a contract was signed by the plaintiff and his wife with the Southern Bell Telephone and Telegraph Company in which plaintiff and his wife were stated to be co-partners, trading

under the firm name of Leeville Telephone Company. And it appears from the evidence of a former secretary of Blanchard that he dictated to her and in the presence of the plaintiff a proposed contract in July, 1934, between the Golden Meadow Telephone Company, Inc., of which Blanchard was president, and Mrs. E. J. Fontenot, wherein Mrs. Fontenot was to secure certain rights of connection with the Golden Meadow Company with a telephone exchange which the draft of the contract recites that Mrs. Fontenot was to construct at Leeville. This former secretary testified that the draft of the proposed contract was drawn in the presence of plaintiff who stated that he had been building the line for his wife and had done a considerable amount of work without pay as he wanted to help out his wife with the property; that the contract was not signed by Mrs. Fontenot as plaintiff objected to his wife signing it because the Leeville Exchange would not appear in the directory as a station for long distance calls, and for other reasons not necessary to state here.

Obviously, in order for the judgment creditor of Mrs. Fontenot to subject the seized property to his judgment against her, he must prove that the property was her separate property, purchased with her separate funds, and under her separate administration. Fortier v. Barry, 111 La. 776, 35 So. 900. Under Article 2402 of the Civil Code, the community property consists of the profits of all the effects of which the husband has the administration and enjoyment, of the produce of the reciprocal industry and labor of husband and wife, and of the estates which they may acquire during the marriage by purchase, etc., whether the purchase be made in their joint names or only in the name of one of them.

Conceding, therefore, that the Leeville Exchange was purchased, erected and operated in the joint names of plaintiff and his wife, under the name of the Leeville Telephone Company, (and that is about all the judgment creditor could claim under the most favorable construction of the evidence) the property would still fall into the community and become a community asset. Tally v. Heffner, Sheriff et al., 29 La.Ann. 583.

We think the trial judge correctly held that the seizing creditor not only failed to prove that the seized property was

the separate property of the judgment debtor, Mrs. Fontenot, but that the plaintiff had shown affirmatively that the seized property was a community asset, and therefore it was not subject to seizure under a judgment against Mrs. Fontenot.

For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellant.