99 So.2d 180 (1957)
Roxie Ann BUTLER, Plaintiff-Appellant,
v.
Indiana BURKS et al., Defendants-Appellees.
No. 8722.
Court of Appeal of Louisiana, Second Circuit.
November 26, 1957.
Rehearing Denied December 19, 1957.
Writ of Certiorari Denied February 10, 1958.
*181 Dhu & Lea S. Thompson, Monroe, for appellant.
Howell H. Heard, West Monroe, for appellees.
GLADNEY, Judge.
Roxie Ann Butler instituted an action in jactitation against the two named defendants, Indiana Burks and Judge Taylor, praying for a decree quieting petitioner in her possession of certain property, situated in Ouachita Parish, Louisiana, and requiring the defendants to assert and prove their claims of title thereto. As a result of responsive pleadings thereafter filed, the suit was converted into a petitory action and the issue of title was presented for determination. The cause came on for trial of the controversy on its merits, wherein the primary point at issue was whether the property was part of the community of acquets and gains created by the marriage between Richard Taylor and Georgia Elmore Taylor. The decree of the court recognized Judge Taylor and Indiana Burks as owners of an undivided 1/24th interest each to the subject property, described as:
"The Southeast Quarter of the Southwest Quarter (SE¼ of SW¼) of Section Five (5); and the East half of the Northwest Quarter (E½ of NW¼) and Northwest Quarter of the Northwest Quarter (NW¼ of NW¼) and the East half of the Southwest Quarter (E½ of SW¼) of Section Eight (8), Township 17 North, Range 1 East."
From the judgment so rendered, plaintiff has appealed.
*182 Our approach to a resolution of the case requires recitation of the family history of the parties litigant, plaintiff and defendants, and a deraignment of the title of the property herein involved from a common owner.
Roxie Ann Butler is the sole and only heir of Georgia Elmore Taylor and was recognized as such in probate proceedings following the death of Georgia Elmore Taylor in 1951. Georgia and Novie Elmore were the only children of M. M. Elmore, who died intestate about the year of 1924. He had become the owner of the two hundred forty acres of land hereinabove described. In 1920 Elmore mortgaged his property to the Federal Land Bank of New Orleans for the sum of $1,500, the act of mortgage providing for payments of $93.75 annually following the first installment of $97.50. At the time of the execution of the mortgage, Elmore was aged and his physical condition no longer permitted him to actively farm his property. For a purpose not disclosed by the instrument, on December 30, 1922, M. M. Elmore deeded his property with assumption of the Federal Land Bank mortgage to his only children then living, Novie Elmore and Georgia Elmore Taylor. The deed recited Novie Elmore was a femme sole over the age of majority and Georgia Taylor was a married woman whose husband was Richard Taylor. The price or consideration was declared to be the sum of $1,500, represented as being the amount due on the Federal Land Bank mortgage, the entire payment of which was assumed by the named grantees. No other consideration is mentioned in the deed. A further examination of the instrument reveals that it was not placed of public record until December 1, 1924, at which time it was recorded in Conveyance Book No. 133, page 151, of the records of Ouachita Parish. The only signatories to the instrument were Novie Elmore, Georgia Taylor, M. M. Elmore and the latter's wife, Charity Elmore, together with the witnesses and notary public. Richard Taylor is not mentioned in the deed.
On December 6, 1918, Richard Taylor married Georgia Elmore Calhoun and became her third husband. Her first husband was Peter Young, who died prior to her second marriage, which was Albert Calhoun. She was divorced from Calhoun prior to her marriage with Richard Taylor. The sole issue of the three marriages was her daughter Roxie Ann Young, the plaintiff in this case, who was married to Adna Butler in the year of 1921. Richard Taylor had once before been married and then to Mary Zeigler, who died in 1918 prior to his marriage to Georgia Elmore. Nine children were born of the first marriage, six of whom, including the two defendants, Judge Taylor and Indiana Burks, survived their father. Richard Taylor died during the year 1944.
Georgia Taylor, in 1947, entered into a partition deed with the heirs of Novie Elmore for a division of the entire Elmore tract and received as her portion of the undivided property, the North Half of the Northwest Quarter (N½ of NW¼) and the Southeast Quarter of the Northwest Quarter (SE¼ of NW¼), Section Eight (8), Township Seventeen (17), North, Range One (1) East. The claims asserted by Judge Taylor and Indiana Burks antedate the partition of the property between Georgia Taylor and the heirs of Novie Elmore, and therefore affect the undivided one-half interest in the Elmore property as conveyed to her by her father. The record further reflects that on June 29, 1945, Frank Taylor, Beulah Fleming, Arie Williams and Elijah Taylor quit-claimed unto Georgia Taylor all their right, title and interest to which they might have had any claim by inheritance from Richard Taylor, the relinquishment affecting the entire property deeded by M. M. Elmore to his two daughters. It is established that at the time of Richard Taylor's death in 1944, his sole surviving heirs were the children named in the quit-claim deed, and Judge Taylor and Indiana Burks, who did not sign the quit-claim instrument.
The decision of the trial court held the property acquired from M. M. Elmore in *183 the name of Georgia Taylor fell into the acquets and gains of the then existing marriage between Georgia and Richard Taylor, and that consequently Judge Taylor and Indiana Burks must be recognized as having an interest in that property. We are in agreement with the opinion of the judge a quo in that the principal legal question posed herein is whether or not the property acquired by Georgia Taylor from M. M. Elmore became separate property of Georgia Taylor or whether it fell into the community existing between Georgia Taylor and her husband, Richard Taylor.
The determination of the community or paraphernal status of property claimed through or by one of the spouses has repeatedly received the consideration of the appellate courts of this state, a fact disclosed in the reported decisions. From the jurisprudence certain legal principles have been firmly established which are uniformly recognized by the bench and bar. It is no longer subject to serious question that the status of the property is fixed at the time of its purchase, and where it was acquired during the existence of the community, the presumption is that it is community property. LSA-Civil Code articles 2399, 2402 and 2405. The presumption so created, however, can be overcome upon proper proof, the requirements of which were pronounced in Betz v. Riviere, 1947, 211 La. 43, 29 So.2d 465, 472, wherein the Supreme Court set forth the following rules.
"Under our community system of law all property acquired by either spouse during the existence of the marriage is presumed to fall into the community of acquets and gains and to overcome this presumption the wife claiming the property in her own name to be her separate property must establish (1) the paraphernality of the funds used for the purchase; (2) her individual administration of the property; and (3) that the money was invested by her. In the event the purchase is made on credit, she has the further burden of establishing (4) that she not only made the down payment out of her separate and paraphernal funds, but that she had sufficient separate revenues and funds to make the purchase with reasonable certainty of being able to meet the deferred payments. Stauffer, Macready & Co. v. Morgan, 39 La.Ann. 632, 2 So. 98; Succession of Burke, 107 La. 82, 31 So. 391; Fortier v. Barry, 111 La. 776, 35 So. 900; Houghton v. Hall, 177 La. 237, 148 So. 37 and Montgomery v. Bouanchaud, 179 La. 312, 315, 154 So. 8."
The foregoing pronouncement was recently approved in the Succession of Franek, 1954, 224 La. 747, 70 So.2d 670, 675. The legal presumption arising from Code Article 2405 is so strong that under Article 2287 all other proof in favor of the party for whom it exists is dispensed with and the presumption can only be rebutted by evidence of the clearest character. Succession of Manning, 1922, 150 La. 1008, 1012, 91 So. 435; Cameron v. Rowland, 1949, 215 La. 177, 40 So.2d 1, 5.
Roxie Ann Butler was thus confronted with the necessity of establishing to a legal certainty that the property acquired by Georgia Taylor during the existence of her marriage became her separate and paraphernal property. Counsel on both sides of the contestatio litis accepted the conditions imposed in Betz v. Riviere, supra, and adduced their evidence accordingly. In the light of the testimony and evidence found in the record, can we say Roxie Ann Butler has met the burden of proof and established by proof the requirements above enunciated?
First, she must show the paraphernality of the funds used by Georgia Elmore Taylor as the price or consideration for the purchase. But no serious question is presented here for the sale by Elmore to his two daughters, one of whom was Georgia Taylor, did not require a *184 down payment. The only consideration of the transfer was the assumption of a mortgage due by the grantor to the Federal Land Bank of New Orleans. We can assume correctly, we think, that Elmore at that time had an equity in the property for which he exacted no additional consideration from his children. Of some probative value is the relationship between the parties and the health of the grantor. When Elmore executed the deed he was no longer able to physically work the farm and therefrom support himself and he undoubtedly realized at his age he would not live many more years. At the time he was living on the property with his two daughters, Novie, who had not been married, and Georgia. The inference is clear, we think, that the transaction was one made in contemplation of his passing on and he desired his two children to have the property. Additionally, he might well have reasoned the ownership furnished an incentive for the grantees to make the small payments due on the property and would cause them to remain with him in his last years.
The second test under consideration relates to the wife's individual administration of the property in question. The principle enunciated is that evidence of a wife's complete administration of the property unassisted by her husband is indicative of its paraphernality. On this point all witnesses uniformly testified Georgia Taylor fully administered her portion of the Elmore property. Gus Bowers, Adna Butler, Roxie Ann Butler, Grady Dunnaway and David Elmore also testified that Richard Taylor remained on the property only a few years after his marriage to Georgia Elmore in 1918 and left, never to return except only for a brief visit "but not as a husband", as expressed by some of the witnesses. Defendants sought to show by Frank Taylor, Judge Taylor and Lula Mae Thomas that Richard Taylor lived on the property with Georgia until about 1930, but they did not testify Richard Taylor performed any work on the place or had anything to do with the administration thereof. As a matter of fact. Judge Taylor and Frank Taylor readily admitted Georgia, with her grandchildren, performed all of the work done on the farm. Roxie Ann Butler testified she married Adna Butler in 1921, and fixing the time by the date she positively says that during the year of her marriage Richard Taylor separated from her mother and thereafter lived off of the property. She stated the separation resulted from a disagreement and Richard Taylor never returned except as a visitor. Judge Taylor recalled that shortly after the marriage of Richard and Georgia Taylor two of the Taylor children whom their father had taken to live with him on the Elmore property, were returned to the home of one of their sisters. This, it seems to us, constitutes some supporting evidence of the time of Richard Taylor's decision to permanently leave the property. Frank and Judge Taylor and Lula Mae Thomas testified that Richard Taylor remained with Georgia until 1930, but this testimony, we think, was successfully rebutted by the witnesses called by Roxie Ann Butler. The testimony of Judge Taylor was inconsistent in several instances and the greater part thereof was unsatisfactory. He and Frank Taylor evidenced unusually poor memories and were not able to correlate their recollection of certain important dates. In this connection, however, we note the inquiry pertained to events which antedated the trial of the case thirty years or more.
The judge a quo apparently concluded Richard Taylor participated in the administration of the property because of his signature upon an promissory note given for money to make a crop in 1936. The document in question in the sum of $50 was dated April 9, 1936, payable to the Farm Credit Administration and due on or before October 3, 1936. It was signed by both Georgia Taylor and Richard Taylor The judge evidently believed Richard Taylor was living on the property at that time and making a crop. A large number of documents relating to similar farm transactions *185 were executed solely by Georgia Taylor, or by Georgia Taylor and Novie Elmore. The note bearing Richard Taylor's signature is the only instance found in the record where the name of Richard Taylor appears in business transactions or acts of administration involving the Elmore property. This fact alone, in our opinion, is not significant. The instrument was evidence of a pledge on the crop for a loan of $50 and without any intention of belaboring the question, we feel certain Richard Taylor's signature, or the signature of any husband at that time, was an imposed legal requirement by the lender, and more likely than not, a condition for a government loan even in cases where it was known the husband had no legal interest in the property. The weight which may be given this evidence is overcome by uniform testimony of all the witnesses that Richard Taylor did not after the first few years of the marriage, work on the property but it was operated by Georgia Taylor, who "plowed like a man", and made crops with the assistance of her two grandchildren, Grady Dunnaway and Gus Bowers and received no help from Richard Taylor. Roxie Ann Butler and her husband, Adna Butler testified they assisted Georgia Taylor by helping her to meet small annual payments due the Federal Land Bank. We find the petitioner, Roxie Ann Butler, has established by a clear preponderance of the evidence that Georgia Taylor was living separate and apart from her husband, although not judicially separated, and that she had the complete administration of her portion of the property in question after it was deeded to her by her father. Therefore, we are convinced plaintiff has proven the individual administration of the property by Georgia Taylor and the credit payments due on the property were made by Georgia Taylor without any assistance from Richard Taylor.
The final condition to be met to rebut successfully the presumption of community status requires proof the wife was possessed of sufficient separate revenues and funds to meet the deferred payments. This is affirmatively shown by the proof adduced that Georgia Taylor was living separate and apart from Richard Taylor after acquiring the property and was able to and did provide through her own work and with the assistance of her daughter, son-in-law and grandchildren, revenues sufficient to meet the annual expenses of the property.
We find plaintiff has successfully rebutted the legal presumption, and it is our conclusion that the district court erred in deciding the property herein involved went into the community of acquets and gains which existed between Richard and Georgia Taylor.
It, therefore, follows from our views hereinabove expressed that the judgment from which appealed must be and hereby is reversed and rendered in favor of the plaintiff, Roxie Ann Butler.
It is, therefore, ordered, adjudged and decreed that there be judgment in favor of plaintiff, Roxie Ann Butler, and against defendants, Judge Taylor and Indiana Taylor Burks, decreeing Roxie Ann Butler to be the true and lawful owner of the following described property situated in Ouachita Parish, Louisiana, to wit:
The North Half of the Northwest Quarter and the Southeast Quarter of the Northwest Quarter, Section Eight, Township Seventeen North, Range One East, less and except property sold by Roxie Ann Butler to J. S. Holmon by deed dated December 1, 1951, recorded in Conveyance Book 491, page 356, and deed dated November 14, 1953 (correction deed) recorded in Conveyance Book 535, page 384, described as follows:
A certain lot or parcel of ground situated in the SE¼ of NW¼ Section 8, T. 17 N., R. 1 E., particularly described as follows: From the southeast corner of said forty, run west along the south line thereof a distance of 140 yards for a place of beginning, thence continue west along the *186 south line of said forty a distance of 70 yards, thence running back north, between parallel lines, parallel to the east line of said forty, a distance of 140 yards, and containing two (2) acres, more or less, less and except a parcel of land sold by Roxie Ann Butler to R. V. Jones by deed dated November 14, 1953, recorded in Conveyance Book 535, page 386, described as being:
A certain tract or parcel of land situated in the SE¼ of NW¼ of Section 8, T. 17 N., R. 1 E., particularly described as follows:
Commencing at the southeast corner of said forty, and running thence west along the south line thereof a distance of 140 yards, thence running back north, between parallel lines, one of which is the east line of said forty, a distance of 140 yards, containing four (4) acres, more or less.
It is further ordered that defendants Judge Taylor and Indiana Taylor Burks pay all costs of this suit, including cost of the appeal.