PER CURIAM*
On the petition of Eloise Winsey Young, Lucinda W. Clark, Juanita Winsey, Willie Alma W. Carey, Gloria W. Porter, and Mary Winsey Stringfellow, alleging themselves to be the sole and only heirs of Willie Winsey by his first marriage to Rosa Jones, which ended in a divorce, Willie Winsey’s succession was opened in the Nineteenth Judicial District Court. An administratrix (Lucinda W. Clark) was appointed and qualified and a notary public (Geraldine E. Bullock) was appointed to make and file inventory of all the property belonging to the succession. Willie Winsey contracted a second marriage to Mary Hawkins on September 15, 1938, of this marriage one child was born, Willie Anne Winsey. A proces verbal of the inventory was filed. Listed thereon as community property forming part of the community of the second marriage with Mary Hawkins Winsey was the following:
“1. One certain lot or parcel of ground * * * SITUATED IN THE PARISH OF EAST BATON ROUGE, STATE OF LOUISIANA, in that subdivision known as SOUTH BATON ROUGE, and designated on the official plan thereof of record in the office of the Clerk of Court and Recorder of East Baton Rouge Parish, Louisiana, as LOT NUMBER TWENTY-TWO (22), SQUARE NUMBER TWELVE (12), said South Baton Rouge, which said lot fronts Forty (40) feet on the east side of Texas Street by a depth of One Hundred (100) feet at right angles and between equal and parallel lines.
“2. One certain lot or parcel of ground * * * situated in the Parish of East Baton Rouge, State of Louisiana, in that subdivision known as SOUTH BATON ROUGE, and designated on the official plan thereof of record in the office of the Clerk of Court and Recorder of East Baton Rouge Parish, Louisiana, as LOT NUMBER FORTY-FIVE (45), SQUARE NUMBER THIRTEEN (13), measuring Forty (40) feet front on Georgia Street by a depth of One Hundred (100) feet between parallel lines.”
Mary Hawkins Winsey, through her counsel, filed herein a motion to traverse the inventory and prayed for service on the Notary Public who took the inventory and on the administratrix calling upon them; to show cause by order of the Court on October 9, 1961 why the inventory should not be amended so as to delete the property described supra among the assets of the succession and why said property should not be declared to be the separate property of mover, Mary Hawkins Winsey. The motion was heard on Monday, October 9r *734 1961 and on Monday, October 16, 1961, submitted on briefs and taken under advisement by the Court. On January 16, 1964 for oral reasons assigned the Trial Court rendered judgment ordering that the immovable property (described supra) be deleted from the succession assets listed in the proces verbal of the inventory taken by Geraldine E. Bullock, Notary Public, and filed in the matter and further decreeing said property to be the separate property of Mary Hawkins Winsey, forming no part of the community of acquets and gains heretofore existing between Mary Hawkins Winsey and Willie Winsey, the decedent. The Trial Court further ordered that all costs be paid by the succession. From this judgment Eloise Winsey Young, Lucinda W. Clark, Juanita Winsey, Willie Alma W. Carey, Gloria W. Porter, and Mary Winsey Stringfellow appealed devolutively to this Court.
On January 16, 1964 an amendment to the inventory in conformity with the Trial Court’s decree was filed.
Mary Hawkins Winsey was divorced from Leonard Matthews on May S, 1938 and she married Willie Winsey on September 15, 1938. After the latter marriage she acquired the following real estate:
“1. By deed from Rosa J. Reymond to Mary Hawkins Winsey on the 16th day of October, 1939 Lot Number 45, Square Number 13, in that subdivision known as SOUTH BATON ROUGE in the Parish of East Baton Rouge (the property described in #2 supra), recorded in Conveyance Book 424, Folio 467 of the records of the Parish of East Baton Rouge, Louisiana, being Original 91, Bundle 1262.
“2. By deed from Stanton P. Gibbens to Mary Hawkins Winsey on the 28 day of February, 1946 Lot Number 22, Square Number 12, in that subdivision known as SOUTH BATON ROUGE in the Parish of East Baton Rouge (the property described in #1 supra), recorded in Conveyance Book 641, Folio 345 of the records of the Parish of East Baton Rouge, Louisiana, being Original 61, Bundle 1820.”
The deed from Rosa J. Reymond recites:
“ * * * said vendor has bargained and sold, and does by these presents grant, bargain, sell, assign, transfer, delivery, abandon and set over under all lawful warranties and with substitution and subrogation to all rights and actions of warranty against all preceding owners and vendors, unto Mary Hawkins Winsey, married two times, the first to Leonard Matthews, from whom she is divorced, and secondly to Willie Winsey, with whom she is now living, a resident of the Parish of East Baton Rouge, hereinafter designated as ‘purchaser,’ here present, accepting and purchasing with her separate funds and for her separate estate * * The deed is signed “Mary Hawkins Winsey” and “Willie Win-sey” in that order.
The deed from Stanton P. Gibbens recites :
“ * * * unto Mary Hawkins Win-sey, of lawful age, born Hawkins, who has been married twice * * * purchasing herein with her separate para-phernal funds under her separate administration and control, and the said Willie Winsey, of lawful age, appearing herein to aid and authorize his said wife herein, acknowledging that she is purchasing herein with her separate paraphernal funds under her separate administration and control, and that the property purchased herein is the separate paraphernal property of his said wife under her separate administration and control, * * *
The law applicable to the factual issue involved in this case is summarized in *735 Butler v. Burks, La.App., 99 So.2d 180, wherein the Court opined:
“The determination of the community or paraphernal status of property claimed through or by one of the spouses has repeatedly received the consideration of the appellate courts of this state, a fact disclosed in the reported decisions. From the jurisprudence certain legal principles have been firmly established which are uniformly recognized by the bench and bar. It is no longer subject to serious question that the status of the property is fixed at the time of its purchase, and where it was acquired during the existence of the community, the presumption is that it is community property. LSA-Civil Code articles 2399, 2402 and 2405. The presumption so created, however, can be overcome upon proper proof, the requirements of which were pronounced in Betz v. Riviere, 1947, 211 La. 43, 29 So.2d 465, 472, wherein the Supreme Court set forth the following rules:
“ ‘Under our community system of law all property acquired by either spouse during the existence of the marriage is presumed to fall into the community of acquets and gains and to overcome this presumption the wife claiming the property in her own name to be her separate property must establish (1) the paraphernality of the funds used for the purchase; (2) her individual administration of the property; and (3) that the money was invested by her. In the event the purchase is made on credit, she has the further burden of establishing (4) that she not only made the down payment out of her separate and paraphernal funds, but that she had sufficient separate revenues and funds to make the purchase with reasonable certainty of being able to meet the deferred payments. Stauffer, Macready & Co. v. Morgan, 39 La.Ann. 632, 2 So. 98; Succession of Burke, 107 La. 82, 31 So. 391; Fortier v. Barry, 111 La. 776, 35 So. 900; Houghton v. Hall, 177 La. 237, 148 So. 37 and Montgomery v. Bouanchaud, 179 La. 312, 315, 154 So. 8.’
“The foregoing pronouncement was recently approved in the Succession of Franek, 1954, 224 La. 747, 70 So.2d 670, 675. The legal presumption arising from Code Article 2405 is so strong that under Article 2287 all other proof in favor of the party for whom it exists is dispensed with and the presumption can only he rebutted by evidence of the clearest character. Succession of Manning, 1922, 150 La. 1008, 1012, 91 So. 435; Cameron v. Rowland, 1949, 215 La. 177, 40 So.2d 1, 5.” (Italics by this Court.)
Accordingly, we come to the first requirement, viz: Did Mary Hawkins Winsey show by evidence of the clearest character the paraphernality of the funds used for the purchase of the properties? The sources to which she attributes these funds are: (1) $800.00 given to her by her mother, Frances Hawkins, which she related was given to her “about three weeks before she passed,” and in other instances she said in 1934, and her mother died in 1935. This inconsistency in itself is not too hard to understand when it is remembered that the witness was testifying in relation to a matter some twenty years before.
However, other testimony offered, particularly that of Mr. Gibbens, who was called by Appellee, raised grave doubt that Mary’s mother had $800.00 in her possession. Mr. Gibbens related Mary’s mother was purchasing under a contract of sale the property which is one of the controverted lots subsequently acquired by Mary. Mr. Gibbens further related that at the time of the alleged donation made by Mary’s mother to her, her mother was far behind in her payments on her home. As to the status of Mary’s mother’s account with Mr. Gibbens on the contract of sale, we quote his testimony as follows:
*736 “A Yes, she had gotten considerably behind and I treated her like I would in any case, let them get behind and not foreclose, giving her an opportunity to catch up the past due payments, and that is what it was in this case, so when Frances died she was considerably behind. I don’t remember how much.”
In addition, it was shown Mary’s mother was supporting her family. It seems incredible that Mary’s mother under such circumstances could have accumulated $800.00 which Mary says she gave to her or that she would have made such donation to Mary rather than apply it on her contract to purchase the property on which she was in default. Second, the $1,000.00 allegedly saved by Mary during the period from 1932 to 1936 while she was earning $3.50 to $5.00 per week working for a Mrs. Johnson, and money she says she received from taking in washing and ironing and renting a room in her house. Corroboration of this portion of her testimony was of the vaguest kind to say the least. According to Mary she placed the $1,000.00, together with the $800.00 allegedly acquired from her mother under a rug in the front room of her house. She said no one knew of her having the money except her brother, James Winsey, to whom she had shown same. During the years of allegedly acquiring this $1,000.00 in cash, Mary was •supporting herself and was also helping to support her brother, James, who, when called as a witness, related Mary had shown him the $1800.00 hidden under the rug shortly after their mother’s death in 1935, and that he had counted it a number of times as he liked to count money, and the •amount of $1800.00 in paper money, of the denominations of fives, tens and twenties. What a bulky package to hide under the rug!
There was no corroboration whatever of Mary’s testimony her mother had given her the $800.00, other than the testimony •of her younger brother who was sixteen at the time that he purportedly counted the money shown to him by his sister. She did not make known the fact of the donation of the money to her by her mother to her other brothers and sisters but allegedly confided only in her younger brother.
In our opinion we can hardly categorize such evidence as being strict, clear, positive and legally certain proof Mary’s impecunious mother donated $800.00 to her.
As to the alleged $1,000.00 saved by her from her earnings prior to her marriage to Willie Winsey, Mary on direct examination said the accumulation of such funds began in 1923. However, on cross-examination she finally pinpointed the accumulation of the $1,000.00 from the years 1932 to 1935. Both Mary and her brother, James, testified that the entire $1800.00 allegedly used in the purchase of the properties herein involved was accumulated in 1935 and stashed under the rug, known only to Mary and to her brother. Mary further gave what we consider to be highly improbable testimony that this alleged $1800.00 remained cached under the rug from 1935 until 1946 when the purchase of the last property herein involved was made. She kept no bank account, she had no other corroborating evidence of the existence of the accumulated money, and in view of the fact she had to support both herself and her younger brother during the period when these funds were allegedly accumulated, the evidence in our opinion falls far short of being strict, clear, positive, and legally certain proof of the para-phernality of the funds allegedly used by Mary in the purchase of the two properties and is insufficient to overcome the legal presumption that property acquired during the marriage falls into the community. Succession of Hemenway, 228 La. 572, 83 So.2d 377; Fleury v. Fleury, La.App., 131 So.2d 355. The judgment of the Court below decreeing the property to be separate property of Mary Hawkins Matthews Win-sey is reversed and judgment is rendered herein decreeing said property to be assets of the community formerly existing be *737 tween Willie Winsey and Mary Hawkins Matthews Winsey and that same he reinstated as such in the inventory filed in these proceedings, at costs of Mary Hawkins Matthews Winsey.
Reversed and rendered.

 This opinion was written by HERGET, J., now deceased, and concurred in by the remaining members of the court, ELLIS, LOTTINGER, LANDRY and REID, JJ.