SAVOY, Judge.
The instant case was instituted by Humble Oil Company as a concursus proceeding to determine the ownership of certain funds which it had in its possession representing the purchase price of interests in oil produced from certain described lands.
The petition of Humble alleged that by an instrument dated October 26, 1959, Ever-ard W. Marks transferred to Pierson Lewis and another party (not made a party to this litigation and not affected by the con-cursus) certain overriding royalty interest in lands situated in Acadia Parish, Louisiana. Petitioner alleged further that it had paid to Pierson Lewis a sum equal to one-half Q4)of the royalty assigned to him by Marks, but had withheld payment of the other interest because of a judgment of separation “a mensa et thoro” rendered on November 5, 1959, by the Civil District Court for the Parish of Orleans, State of Louisiana, in a suit instituted by Pierson Lewis against his wife, Janice Butler Lewis.
Humble stated in its petition that Pierson Lewis contended that the assignment of October 26, 1959, constituted his separate property; whereas Janice Butler Lewis contended that she owned an undivided one-half (p/z) interest in said assignment of overriding royalty because it was community property since it was acquired during the existence of the community of acquets and gains between her and her husband, Pierson Lewis.
Humble prayed that as the purchaser of the oil from the lands covering the assignment of October 26, 1959, it be permitted to deposit the initial oil payment in the Registry of the court, and that it continue to do so until the matter had been resolved by the court. Humble prayed finally that it be relieved from the payment of court costs and that costs of the instant suit be paid from the funds deposited and to be deposited in the Registry of the court.
Both Pierson Lewis and his wife were cited to answer and assert their respective rights to said funds deposited in the Registry of the court.
Pierson Lewis filed an answer to the suit alleging that the overriding royalty assigned to him by Marks was his own separate property; that although the deed of conveyance and assignment was dated October 26, 1959, said assignment was held in escrow by Marks and was not to become effective until certain curative work was done on mineral leases obtained by him for Marks, and until other assignments- of mineral leases were secured by Lewis, and a loan was obtained by Marks on said mineral leases. Lewis further alleged that the overriding royalty assignment was held by Marks and his attorney until the required work in curing the title to said mineral leases was done and the loan obtained; that the above requirements set forth were *798 not met until after the judgment of separation dated November 12, 1959, and said deed was recorded by Lewis on December 2, 1959.
Mrs. Pierson Lewis, nee Janice Butler, also -filed an answer in the instant suit alleging that she and Pierson Lewis were judicially separated by judgment of .court dated November 12, 1959; that she and her husband had not obtained a final divorce and no property settlement had been entered into between her and her husband; nor was there any mention made in the judg, ment of separation ordering an inventory of the community property.
Prior to the trial, numerous depositions were taken at the request of the attorney for Mr. Lewis. At the taking of the depositions, the attorney for Mrs. Lewis objected to any parol evidence as to the escrow agreement for the reason that the alleged escrow agreement was a verbal one, whereas the assignment from Marks to Pierson was in writing, affecting immovable property and was an authentic act; and parol testimony was inadmissible to vary the terms of the said instrument.
After a trial on the merits, the judge of the district court held that the property in controversy was the separate property of plaintiff, Pierson Lewis, citing as authority for his holding the case of Wampler v. Wampler, 239 La. 315, 118 So.2d 423. From said adverse judgment, Mrs. Lewis has appealed to this Court.
Parol evidence was admissible to prove the terms of the assignment in the instant case under the Supreme Court decision in Wampler v. Wampler, supra, and the trial court was correct in so holding.
Having determined that parol evidence is admissible and was properly received in the instant case, this Court will consider whether the said Pierson Lewis acquired the royalty interest from Marks during the existence of the community between him and his wife, Janice Butler.
LSA-C.C. Article 2399 reads as follows:
“Every marriage contracted in this State, superinduces of right partnership - or community of acquets or gains, if there be no stipulation to the contrary.”
LSA-C.C. Article 2402 reads, in part, to-wit:
“This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. * * ”
LSA-C.C. Article 2405 states the following :
“At the time of the dissolution of the marriage, all effects which both husband and wife reciprocally possess, are presumed common effects or gains, unless it be satisfactorily proved which of such effects they brought in marriage, or which have been given them separately, or which they have respectively inherited.”
Counsel for Lewis contends that the case of Wampler v. Wampler, supra, is controlling in the instant case. In that case Vyola Wampler sued Charles Wampler to be decreed the owner of an undivided one-half (1/2) interest in an oil, gas and mineral lease which she alleged had been purchased by her husband, Charles Wampler, prior to the dissolution of their marriage. Mrs. Wamp-ler and her husband were divorced on August 15, 1952. On July 8, 1952, an assignment of the lease in question had been executed by R. L. Corley in favor of Charles *799 Wampler and a brother. At the time of the assignment, ten (10) of eighteen (18) owners of said leased property had not signed said lease. Because of this and the fact that the title to said lease had not been examined by the attorney for the assignees, Corley left the incompleted lease and the executed assignment with an attorney under a verbal agreement that Charles Wampler was not to pay the purchase price of said lease until all lessors had signed the lease and until all of the title curative work had been completed by the attorney who was acting as escrow agent. On July 23, 1952, (before the divorce was granted) Corley acquired all of the signatures required to complete the lease. The title correction work was not completed, however, and the consideration for the lease was not paid by Wampler until more than a month after the divorce was granted.
We think the facts presented in the instant suit are distinguishable from those presented in the Wampler case. In the Wampler case, supra, neither party had performed the obligations assumed.by him in oral agreement by the time the divorce was granted. Corley had not delivered a merchantable title to the leases and Wampler had not paid the consideration which he had agreed to pay. The contract, therefore, had not been completed and Wampler was not entitled to the assignment of the overriding royalty interest at the time the divorce was granted. In the instant suit, however, both parties to the oral agreement had completed all of the obligations which they had agreed to perform. Lewis had obtained and had delivered to Marks all of the leases which he had agreed to obtain, and Marks in turn had executed the assignment of an overriding interest in favor of Lewis, which constituted the consideration he had agreed to pay Lewis for these leases. Neither party was obligated to do anything further, and the only reason why the overriding royalty assignment was not delivered to Lewis on October 26, 1959 (which was before the divorce was granted), was simply to give Marks time within which to have the titles examined and to determine whether he actually had obtained a 75 per cent working interest in such leases, pursuant to the agreement. Although the record shows that some curative title work was done after the assignment was executed by Marks, and even after the separation decree between Lewis and his wife had been rendered, there is nothing in the record which indicates, or even casts a suspicion, that Lewis had not delivered a 75 per cent working interest in the leases to Marks on or prior to October 26, 1959.
Article 2021 of the LSA-Civil Code, relating to conditional obligations, provides that:
“If the obligation is not to take effect until the event happen, it is a suspen-sive condition; if the obligation takes effect immediately, but is liable to be defeated when the event happens, it is then a resolutory condition.”
In the Wampler case, supra, a suspensive condition existed, because the obligation was not to take effect until the consideration had been paid and a valid title had been delivered, neither of which events occurred until after the divorce had been rendered. In the instant suit, however, we think the obligation took effect when the assignment was executed on October 26, 1959, because both parties had performed all obligations which they had assumed; and that any conditions which may have existed after that date were resolutory in nature, that is, the assignment was liable to be defeated if it should be later determined that Lewis had not actually delivered a 75 per cent working interest in the leases. We think the trial court erred in the instant suit in concluding that the conveyance of the overriding royalty was subject to a suspensive, rather than a reso-lutory, condition.
It is a well-settled principle of law that property acquired during the existence of the community is presumed to be community property and will not be deemed otherwise unless the spouse who contends it is separate property introduces sufficient *800 evidence to rebut that presumption. LSA-Civil Code, Article 2405. The legal presumption created by LSA-Civil Code, Article 2405 is so strong that it can be rebutted only by evidence of the clearest character. Cameron v. Rowland, 215 La. 177, 40 So.2d 1; Succession of Hemenway, 228 La. 572, 83 So.2d 377; Butler v. Burks, (La.App., 2 Cir., 1957), 99 So.2d 180 (Cert. denied); Beatty v. Vining, (La.App., 2 Cir., 1962), 147 So.2d 37. Since the assignment of the overriding royalty interest involved in this case was executed and dated before the dissolution of the community between Lewis and his wife, we think there is clearly a presumption that it became a part of the community, and that the burden of proof rests upon Lewis to establish his contention that it did not. LSA-Civil Code, Article 2405; Succession of Viola, (La.App., 4 Cir., 1962), 138 So.2d 613. In our opinion Lewis has failed to meet that burden of proof.
Counsel for Pierson Lewis contends alternatively in his brief and on oral argument that because of the recent enactment of Act 178 of 1962, which amends LSA-C.C. Article 155, the article is retroactive; (the record shows that a preliminary default was entered in the Orleans separation suit on October 7, 1959. There is no showing when the Orleans suit was filed.) and that since the suit for separation filed between the parties occurred before the conveyance of the royalty interest to him on October 26, 1959, the royalty is his separate and para-phernal property.
LSA-C.C. Article 155, as amended by Act 178 of 1962, provides the following language, to-wit:
“The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the petition for same was filed, but such retroactive effect shall be without prejudice (a) to the liability of the community for the attorneys’ fees and costs incurred by the wife in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and rec-ordation of the judgment. Upon reconciliation of the spouses, the community may be re-established by husband and wife jointly, as of the date of the filing of the suit for separation from bed and board, by an act before a notary and two witnesses, which act shall be recorded in the conveyance office of the parish where said parties are domiciled, but which act shall be without prejudice to rights validly acquired in the interim between rendition of the judgment and recordation of the act of reconciliation.”
In the case of Tanner v. Tanner, 229 La. 399, 86 So. 85, the Supreme Court of this State, on rehearing, held that the community of acquets and gains heretofore between Tanner and his wife was dissolved on the date of the signing of the judgment of separation “a mensa et thoro”.
We are of the opinion that the argument advanced by counsel for Pierson Lewis in the instant case is without merit for the reason that Mrs. Janice Butler Lewis had acquired a property right in the instant property at the time of the judgment of separation between her and her husband dated November 12, 1959, which was prior to the adoption of Act 178 of 1962, Tanner v. Tanner, supra.
This court is of the opinion that the property which is the subject of this litigation, is hereby determined to be community property and to belong to Mrs. Janice Butler Lewis, together with all of the funds deposited by Humble Oil Company in the Registry of the court for Acadia Parish, Louisiana.
For the reasons assigned, the judgment of the district court is reversed, and judgment is hereby rendered in favor of Janice Butler Lewis, decreeing her to be the owner of the following described property situated in Acadia Parish, Louisiana, to-wit:
(A) A .014350 overriding royalty interest in unit production from Discovery Oil and *801 Gas Company, Inc., Winnie L. Prejean Unit No. 1, said unit being more particularly described as follows, to-wit:
Beginning at a point 89 deg., 34 min. West 1258.3 feet from the corner common to Sections 27, 28, 33 and 34, Township 8 South, Range 3 East, Acadia Parish, Louisiana; thence South 03 deg., 14 min., 47 sec. West 215.4 feet; thence West 1282.5 feet; thence North 1320.0 feet; thence East 1357.4 feet; thence South 03 deg., 14 min., 47 sec. West 1106.7 feet to the place of beginning, containing 40 acres, more or less;
(B) A .010528 overriding royalty interest in unit production from Discovery Oil and Gas Company, Inc., Leonard Prejean, et al., Unit No. 1, said unit being more particularly described as follows, to-wit:
From a point common to Sections 27, 28, 33 and 34, Township 8 South, Range 3 East, proceed on a line South 89 deg., 34 min. West 1258.3 feet; thence South .03 deg., 14 min., 47 sec. West 215.4 feet to the point of beginning; thence South 03 deg., 14 min., 47 sec. West 1201.5 feet; thence West 1201.9 feet; thence North 03 deg., 14 min., 47 sec. East 754.6 feet; thence North 03 deg., 41 min., 50 sec. East 447.6 feet; thence East 1198.-2 feet to the point of beginning, containing 33.09 acres, more or less, AS TO OIL PRODUCED FROM THE SURFACE OF THE GROUND DOWN TO A DEPTH OF 9400 FEET;
(C) A .013938 overriding royalty interest in unit production from Discovery Oil and Gas Company, Inc., J. Sidney Lyons Unit No. 1, said unit being more particularly described as follows, to-wit:
From the corner common to Sections 27, 28, 33 and 34 proceed on a line 89 deg., 34 min., 19 sec. West 2553.3 feet; thence South 23.1 feet to the point of beginning; thence South 182.3 feet; thence East 84.3 feet; thence South 03 deg., 41 min., 50 sec. West 447.6 feet; thence South 03 deg., 14 min., 47 sec. West’ 884.3 feet; thence West 732.7 feet; thence North 08 deg., 06 min., 05 sec. West 280.6 feet; thence South 77 deg., 24 min., 57 sec. West 137.7 feet; thence North 05 deg., 53 min., 13 sec. West 584.6 feet; thence North 06 deg., 09 min., 56 sec. West 672.1 feet; thence North 89 deg., 12 min., 20 sec. East 1033.7 feet to the point of beginning, containing 33.43 acres, more or less, AS TO OIL PRODUCED FROM THE SURFACE OF THE GROUND DOWN TO A DEPTH OF 9400 FEET;
together with all of the funds in the Registry of the court in the instant case deposited by Humble Oil & Refining Company.
Costs incurred in the district court and in this Court are to be paid out of the proceeds in the Registry of the court in the instant case.
Reversed and rendered.